## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-DR-01392-SCT

*JOSEPH DANIEL BURNS a/k/a 'JOJO' BURNS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/06/1996 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JUDY T. MARTIN |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | MOTION FOR LEAVE TO FILE PETITION FOR POST-CONVICTION RELIEF GRANTED IN PART AND DENIED IN PART- 10/11/2001 |
| MOTION FOR REHEARING FILED: | 10/23/2001; denied 4/18/2002 |
| MANDATE ISSUED: | 4/25/2002 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Joseph Daniel Burns a/k/a JoJo Burns was convicted of the capital murder of Floyd Melvin McBride in Lee County in 1996. After the sentencing phase, Burns was sentenced to death by lethal injection. Burns's conviction and sentence were affirmed by this Court in *Burns v. State*, 729 So.2d 203 (Miss.1998). This Court denied the motion for rehearing on January 28, 1999. The United States Supreme Court denied Burns's petition for writ of certiorari on June 24, 1999. *Burns v. Mississippi*, 527 U.S. 1041, 119 S.Ct. 2406, 144 L.Ed.2d 804 (1999). Burns's motion for rehearing was denied on August 23, 1999. *Burns v. Mississippi*, 527 U.S. 1059, 120 S.Ct. 26, 144 L.Ed.2d 830 (1999).

¶2. Burns filed his Pro Se Petition for Post-Conviction Relief on August 23, 1999. Thereafter, in accordance with *Jackson v. State*, 732 So.2d 187 (Miss.1999), this Court remanded the post-conviction proceedings to the Lee County Circuit Court for appointment of qualified counsel to represent Burns. Counsel has been appointed and has filed a Supplemental Application for Post-Conviction Relief which is presently before the Court.

## FACTS AND PROCEEDINGS BELOW

¶3. On November 10, 1994, the body of Floyd Melvin McBride, the manager of the Town House Motel in Tupelo, was found in the motel residence where he lived. The manager's residence was connected to the office. McBride had been beaten and stabbed until he bled to death. The motel's money box had been pried open and its contents had been taken. The initial investigation of the murder was fruitless. However, several months after the crime, law enforcement authorities received telephone calls from anonymous persons who implicated Jo Jo Burns, Phillip Hale and Jeff Hale. Upon questioning, Phillip Hale told officers that he and Burns had robbed the motel and that Burns had killed McBride. Burns and Hale were indicted for the capital murder of McBride. The cases were severed for trial.

¶4. Phillip Hale testified at Burns's trial that he and Burns had gone to see McBride at the motel. McBride was an acquaintance of Hale's. While there, McBride asked if the two wanted to help him count the motel's cash. Hale and Burns then decided to rob McBride. Hale testified that he struck McBride and knocked him down. He then left the room to find the money or to see if anyone was coming. When he returned, he saw Burns stabbing McBride with a knife, a screwdriver, and a fork. The two then pried open the cash box, took the money, wiped away their fingerprints and left the motel.

¶5. Several witnesses testified that they had seen a light brown or tan older model truck parked in front of the motel on the night of the crime. Jeff Hale owned a mid 1960's Ford pickup truck. His brother Phillip was driving the truck at the time of the murder. Jeff Hale testified that Burns and Phillip had discussed the murder with him several days later. He stated that Burns told him that he had killed McBride because he did not want to leave any witnesses. Both Hale brothers and Burns went to Tunica where they gambled with the cash taken from the motel.

¶6. Janie Taylor, Burns's girlfriend who was living with Burns and Phillip Hale at the time of the crime, testified that Burns and Hale had come home at 3 or 4 a.m. on November 10 with $3,000 in cash which Burns and Hale had split. She testified that Burns had admitted to her that they had killed a man at the motel. She also stated that she had later seen Burns in a car with Carrie Cryder. Burns had a bundle which appeared to be several tools wrapped in the shirt he had worn on the night of the crime. Cryder testified that he had been riding around with Burns several weeks after the murder when Burns had gone into the weeds behind his trailer and had returned with a package or a bag. Cryder testified that Burns later had him stop near a bridge, that Burns took the package with him toward the bridge and later returned to the car without it.

¶7. The State went to great effort to show that Burns had written two incriminatory letters to a female inmate while he was also in the Lee County jail. In one of those letters to Contina Kohlheim, Burns wrote that "I took a man's life and now I'm looking at the death penalty." In another letter to Kohlheim, Burns wrote "Look, about the guy I killed, me and Phillip were dealing with a lot of dope and Phillip was giving our dope up front to this guy. He had owed us 58,000 dollars. I told Phillip to ask him one more time to pay us but he never did. So that night we went to the town house and I killed his ass." Burns was not charged with any other murder and no one else had been killed at the Town House motel. A Lee County jail trusty testified that Burns had given letters to him to deliver to a female trusty who was to give them to Kohlheim. Kohlheim testified that a female trusty had given the letters to her.

¶8. After obtaining the letters, the district attorney sought to compare the handwriting to a known sample of Burns's writing. To obtain a sample of Burns's writing, the sheriff falsely told Burns that he needed a list of

all people Burns wanted to be listed as his possible visitors. The State's handwriting expert compared the known Burns samples and the letters to Kohlheim and testified that there was a "strong probability" that the writer was the same person. Additionally, Burns's fingerprints were lifted from both letters.

¶9. Burns called only one witness. Olen Harbin testified that he had been at the Town House on the night of the crime and that he had seen the tan truck drive up. He testified that he thought that a man and a woman had been in the truck. He also testified that he called the front desk and a strange woman answered the phone. The defense argued that Janie Taylor had been with Phillip Hale and that Hale had killed McBride.

¶10. The jury returned a verdict of guilty of capital murder. Before the sentencing phase began, the defense informed the judge that it did not intend to present any witnesses during the sentencing phase. The judge questioned Burns about that decision outside the presence of the jury. Burns stated that he understood that he had the right to call witnesses or testify himself. The judge asked if the decision not to call witnesses was his and Burns replied affirmatively. The State chose not to call witnesses and resubmitted all of the evidence from the guilt phase. The defense offered by stipulation the fact that Burns was 26 years old at the time of the crime. After closing arguments, the jury deliberated two and a half hours before returning a verdict in the sentencing phase. The jury specifically found that Burns actually killed McBride, that he attempted to kill McBride, that he intended that the killing would take place, and that he contemplated that lethal force would be used. Finally, the jury found that there were insufficient mitigating circumstances to outweigh the aggravating circumstances and sentenced Burns to death.

¶11. Burns's direct appeal was affirmed by this Court in **Burns v. State**, 729 So.2d 203 (Miss.1998). Presently before the Court are the pro se Petition for Post-Conviction Relief and the Supplemental Application for Post-Conviction Relief filed by counsel for Burns.

## ANALYSIS

¶12. Burns's attorney raises ten issues in the supplemental petition:

**I. INEFFECTIVE ASSISTANCE IN TRIAL COUNSEL'S FAILURE TO INSURE THAT BENCH CONFERENCES WERE RECORDED.**

**II. INEFFECTIVE ASSISTANCE IN ALLOWING JURY SELECTION TO TAKE PLACE DURING A RECESS.**

**III. INEFFECTIVE ASSISTANCE IN FAILING TO SUPPORT THE DEFENDANT'S MOTION FOR A PSYCHIATRIC EVALUATION.**

**IV. INEFFECTIVE ASSISTANCE IN FAILING TO WAIVE THE PRESENCE OF THE DEFENDANT AT THE DRAWING OF THE SPECIAL VENIRE.**

**V. INEFFECTIVE ASSISTANCE IN FAILING TO OBJECT TO THE TRIAL COURT'S INSTRUCTION ALLOWING ONLY TWO SENTENCING OPTIONS: DEATH OR LIFE WITHOUT PAROLE.**

**VI. INEFFECTIVE ASSISTANCE IN PRESENTING AN INADEQUATE OPENING ARGUMENT.**

**VII. INEFFECTIVE ASSISTANCE AT THE SENTENCING PHASE.**

**VIII. INEFFECTIVE ASSISTANCE IN PRESENTING THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL.**

**IX. INEFFECTIVE ASSISTANCE ON DIRECT APPEAL.**

**X. THE HANDWRITING EXEMPLARS WERE TAKEN IN VIOLATION OF BURNS'S CONSTITUTIONAL RIGHTS AND SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE**.

¶13. In his pro se petition, Burns raises five claims:

**I. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.**

**II. INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE SENTENCING PHASE.**

**III. INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL.**

**IV. FAILURE OF THE STATE TO REVEAL ALL EXCULPATORY EVIDENCE.**

**V. OTHER UNKNOWN FACT BASED CLAIMS.**

¶14. The majority of the issues presented relate to claims of ineffective assistance of counsel. Burns was represented at trial by Melvin Ellis, III, and William Bristow. On appeal, he was represented by Ellis and Wayne Housley. The standard for determining if a defendant received effective assistance of counsel is well settled. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So.2d 468, 477 (Miss.1984) (citing *Strickland v. Washington*, 466 U.S. at 687). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* at 477 (citing *Strickland*, 466 U.S. at 689). Defense counsel is presumed competent. *Washington v. State*, 620 So.2d 966 (Miss.1993). Additionally,

> to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Mohr v. State*, 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id.* The question here is

> whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

> There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991).

*Davis v. State*, 743 So.2d 326, 334 (Miss. 1999) citing *Foster v. State*, 687 So.2d 1124, 1130 (Miss. 1996).

## I. THE FAILURE TO INSURE THAT BENCH CONFERENCES WERE RECORDED.

¶15. In the supplemental proceeding, Burns claims that his trial attorneys were ineffective in failing to see that the court reporter recorded all conversations which took place at the bench during the trial. Prior to trial, Burns had made a motion to require the court reporter to record those conferences. That motion was granted. Nonetheless, the trial transcript reveals that many bench conferences were in fact conducted without being recorded by the court reporter. Burns now faults his attorney for failing to see that those conferences were preserved in the record.

¶16. Burns cites *Davis v. State*, 684 So.2d 643 (Miss.1996), in which this Court held that trial courts should insure that every word at trial is transcribed. The Court further held that "[W]e direct without equivocation that court reporters should never fail to preserve for record at-the-bench or chambers conferences following objections . . . The trial judge is responsible to enforce this directive." *Id*. at 651 (quoting *Suan v. State* 511 So.2d 144, 147 (Miss.1987)). *See also Thorson v. State*, 653 So.2d 876, 895 (Miss.1994); *Doby v. State*, 557 So.2d 533, 536 (Miss.1990).

¶17. Here the court reporter failed to transcribe approximately 24 bench conferences. This matter was addressed in Burns's direct appeal. In the direct appeal, Burns alleged that the trial court erred in failing to require the court reporter to record those conferences. The Court on direct appeal found that most of the bench conferences at issue concerned administrative matters and that nothing of substance was omitted from the trial court record. *Burns*, 729 So.2d at 211. In finding that the record was sufficiently complete to allow a full and complete appellate review the Court found that:

> After a thorough review of the record in this case, we determine that the subject of the discussions as well as the outcome of those discussions was clear. When taken in the context in which they arose, the reason for the discussions was apparent. Burns raises no issue on appeal in which he argues that there is an insufficient record to adequately pursue his appeal. Therefore, the argument presented by Burns in his brief, is insufficient to establish a valid claim of an incomplete record.

*Id.* at 212.

¶18. Burns claims that several of the conferences "touched upon rights of the Defendant." The unrecorded conferences specifically noted by Burns do not reveal any prejudice. The first, which Burns claims touched on his right to testify, was actually recorded by the reporter. Burns claims that the conference which occurred on page 545 of the record dealt with the decision to call only one witness. The conference occurred before the defense rested and there is no indication in the record as to what that conference was in fact about. Burns also refers to conferences immediately prior to both closing arguments in the sentencing phase. Those conferences appear to be administrative in nature. From the record, it does not appear that any rulings were made by the Court during or after those conferences.

¶19. Because the Court addressed the issue of prejudice in the issue of the absence of bench conference transcripts, this issue is barred here. Miss. Code Ann. § 99-39-2 (2000) ("litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue"). *See also **Wiley v. State***, 750 So.2d 1193, 1198 (Miss.1999). Burns makes no additional claim of prejudice. He makes no affirmative argument that anything of substance occurred during any of those conferences but he implies that there may have been something of importance omitted from the record. Because the Court substantially addressed this issue on direct appeal and found no error and because Burns has made no new allegation of prejudice, this issue is barred. Notwithstanding the procedural bar, the Court finds no prejudice here.

### II. INEFFECTIVE ASSISTANCE IN ALLOWING JURY SELECTION TO TAKE PLACE DURING A RECESS.

¶20. Burns claims that his rights were violated when the jury in his trial was selected during a recess. He claims that his attorney was ineffective in allowing this to happen. The record reveals that challenges for cause were recorded. After ruling on the challenges for cause, the following discussion took place:

THE COURT: All right. Let's get busy. Any additional challenges by the Defendant?

MR. ELLIS: No, your honor.

THE COURT: Let the record reflect that. Get us 14 jurors.

At that point, there was a recess and then the jurors were seated. There is no mention in the record of peremptory challenges being used by either side.

¶21. Miss. Code Ann. § 99-17-3 (2000) provides that the State and the defense will have twelve peremptory challenges in capital cases. Burns cites ***Hollis v. State***, 221 Miss. 677, 74 So.2d 747 (1954), where the Court stated "in order to comply with the constitutional mandate of a public trial, peremptory challenges should be exercised at the bar, in open court." ***Id***. at 681.

¶22. Burns now argues that the jury was selected during the recess. The record reveals that the jury was already selected when the court went into recess and that the entire selection process is on the record. From the record, it appears that the defense declined to challenge any jurors peremptorily or waived its right to use peremptory challenges against the remaining jurors. Burns claims only that his right to a public trial was violated and that there is no record of any possible ***Batson*** challenge. He makes no allegation that a ***Batson*** violation occurred or that any juror who actually served had any bias or prejudice against the defense. The Fifth Circuit Court of Appeals considers an attorney's actions during voir dire to be a matter

of trial strategy, which "cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.' " *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir.1983)). Federal courts have held that an attorney's failure to exercise peremptory challenges does not give rise to a claim of ineffective assistance of counsel absent a showing that the defendant was prejudiced by his counsel's failure to exercise the challenges. *United States v. Taylor,* 832 F.2d 1187 (10th Cir.1987). *See also Mattheson v. King*, 751 F.2d 1432, 1438 (5th Cir.1985). We find that Burns has not shown that his attorneys were ineffective in the jury selection process.

### III. INEFFECTIVE ASSISTANCE IN FAILING TO SUPPORT THE DEFENDANT'S MOTION FOR A PSYCHIATRIC EVALUATION.

¶23. Prior to trial, counsel for Burns filed a motion for psychiatric assistance. He sought funds to hire a psychiatric expert who would evaluate Burns's competence. The trial court denied the motion after finding that there was nothing in the record to support a finding of any indication of mental impairment or deficiency. Burns raised the denial of his request for funds for a psychiatrist on direct appeal. The Court, relying on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), found that the trial court's decision was proper in that there was no evidence that Burns had any psychological problem, mental illness or would be a danger to society. *Burns*, 729 So.2d at 224. Burns now claims that his attorneys at trial were ineffective in failing to support the motion for psychiatric assistance with affidavits or other evidence.

¶24. Burns has submitted his own affidavit and an affidavit from the mother of one of his children. Burns claims that he suffered a head injury in 1993 or 1994 and that another head injury required hospitalization in 1995 after the murder. Brandi Thorne states in her affidavit that Burns "has been involved in numerous fights and has received numerous head injuries." Burns still has not shown by any reliable measure that his psychiatric condition then or now required attention or that the outcome of his trial was in any way affected. As the Court found in the direct appeal, there still is no indication that Burns suffers from any psychological condition. This Court finds no merit in this issue.

### IV. INEFFECTIVE ASSISTANCE IN FAILING TO WAIVE THE PRESENCE OF THE DEFENDANT AT THE DRAWING OF THE SPECIAL VENIRE.

¶25. Burns claims that he never waived his right to be present at the drawing of the special venire in this matter. He cites authority which states that a defendant has the right to be present at all critical states in the proceedings but he provides no authority which holds that a defendant's absence at the drawing of the special venire is reversible error. While the special venire must be drawn "in open court" according to Miss. Code Ann. § 13-5-77 (Supp. 2001), Burns cites no cases which find reversible error if the defendant was not present at the drawing of the special venire. Here, Burns argues no impropriety in the drawing and makes no allegation that any venireman was biased against him. This Court has held that the better practice would be to have the accused present at the drawing of the special venire. *Kendall v. State*, 249 So.2d 657, 660 (Miss.1971). However, in *Kendall,* the Court ruled that no reversible error occurred in the absence of any showing of prejudice to the defendant. *Id.* Burns concedes as much here. His attorney admits that this omission alone does not amount to reversible error. The Court finds that this claim of ineffective assistance of counsel is without merit.

### V. INEFFECTIVE ASSISTANCE IN FAILING TO OBJECT TO THE TRIAL COURT'S INSTRUCTION ALLOWING ONLY TWO SENTENCING OPTIONS: DEATH OR LIFE

**WITHOUT PAROLE.**

¶26. At the sentencing phase, the jury was instructed that it could return a verdict of death or life without parole. Burns complains now that the jury was not instructed that a verdict of life with parole was available. Miss. Code Ann. § 97-3-21(2000) and Miss. Code Ann. § 99-19-101(1) (2000) provide that persons convicted of capital murder are to be sentenced to death, life without parole, or life with parole. However, the legislature removed parole as an option for capital murder convicts with Miss. Code Ann. § 47-7-3(f) which provides that "No person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101." Burns argues that his attorneys were ineffective in failing to object to the trial court's instructions during the sentencing phase.

¶27. This Court addressed this issue in *Puckett v. State*, 737 So.2d 322 (Miss.1999). In that case, the Court held that "where the jury imposes the death penalty, the fact that the jury was not given the option of life with parole does not constitute harmful error. It is not logical to think that had the jury been given the option of life with parole, they might have selected that option over the death penalty." *Id*. at 363. This issue is without merit.

## VI. INEFFECTIVE ASSISTANCE IN PRESENTING AN INADEQUATE OPENING ARGUMENT.

¶28. Burns claims that his attorney's opening argument failed to advance the defendant's case. In his opening argument, counsel for Burns asked the jury to be open to the defense's theory that Phillip Hale and not Jo Jo Burns had killed McBride.

¶29. The State argues that Burns has shown no prejudice here and that counsel for Burns could have elected not to give an opening statement at all. *Eakes v. State*, 665 So.2d 852, 873 (Miss.1995); *Cabello v. State*, 524 So.2d at 318. As previously noted, decisions of trial strategy are presumed to be reasonable. And this Court has held that "[T]he decision to make an opening statement is 'a strategic one.' " *Manning v. State*, 735 So.2d 323 347 (Miss.1999)(citing *Cabello v. State*, 524 So.2d 313, 318 (Miss.1988) (quoting *Gilliard v. State*, 462 So.2d 710, 716 (Miss.1985)).

¶30. Burns cites *Woodward v. State*, 635 So.2d 805 (Miss.1993). Woodward's death penalty was reversed in part because his attorney stated in closing argument at the sentencing phase that he could not ask the jury to spare the defendant's life based on the facts in that case. The Court found that statement to amount to ineffective assistance in that it "severely prejudiced any chance Woodward had to receive a life sentence from this jury." *Id*. at 809. *Woodward* is distinguishable. Here, counsel for Burns made no statements which could in any way be considered prejudicial to Burns.

¶31. The argument here was not deficient. Counsel for Burns had a difficult situation in which the defendant had admitted his role in the crimes to several persons. Additionally, Burns's accomplice was going to testify against him. In light of the weight of the evidence against his client, counsel for Burns's opening argument was not deficient.

## VII. INEFFECTIVE ASSISTANCE AT THE SENTENCING PHASE.

¶32. The defense offered no witnesses during the sentencing phase. The defense stipulated only that Burns was 26 years old at the time of the crime. Burns now claims that his attorney was ineffective in failing to present witnesses at the sentencing phase. He submits affidavits from Burns's mother, his sister, the mother

of one of his children, a former girlfriend, a former employer and two former co-workers. The affidavits are attached to the supplemental application. These potential witnesses generally state that Burns had some redeeming qualities and that they would have been willing to testify at Burns's trial.

¶33. Jean Henry, Burns's mother, states that she would have been willing to testify at the sentencing phase if Burns's attorneys had called her. She states that she would have told the jury that she loved her son and that he grew up without a real father-figure. She also claims that her only other son has since died. Dalana Loveless Green, Burns's sister, states that he was a good father, a good brother, and a hard worker. Two co-workers and a former employer state that Burns was a good worker and that he was dependable.

¶34. Some of the evidence as proposed in the affidavits probably would not have aided the defense. Burns's mother states that Burns has a temper. His sister states that Jo Jo had a problem with crystal methamphetamine at the time of the crimes. The mother of his child has submitted an affidavit in which she also claims that Burns had a drinking and drug problem. She also claims that he had been involved in numerous fights which might have resulted in a head injury.

¶35. Because some of the information was not helpful to the defense, it is possible that the decision not to call any witnesses was defensible trial strategy. There are indications in the record that Burns had prior felony convictions, although his criminal record is not explicitly explained. Given his criminal background, his history of drug and alcohol abuse, and his history of involvement in fights, the defense likely feared that calling some of these witnesses would do more harm than good.

¶36. Burns also presents affidavits from three jurors who sat during his trial and returned the death penalty. Each of those jurors claims that they would have been interested in his family background and personal history. Two claim that that information might have made the difference between death and life. The third states only that she would have taken any additional information into consideration.

¶37. The State argues that the decision not to call any witnesses was made by Burns himself. The trial court questioned Burns outside the presence of the jury and he acknowledged that he understood that he had the right to testify and the right to call witnesses. He stated that it was his ultimate decision not to present any evidence in mitigation. However, Burns has submitted an affidavit from one of his attorneys at trial who states that the lead attorney decided not to call any witnesses at the sentencing phase.

¶38. This Court has held that the "failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." ***Williams v. State****, 722 So.2d 447, 450 (Miss.1998), citing ***Williams v. Cain****, 125 F.3d 269, 277 (5th Cir.1997).

¶39. In ***Woodward v. State***, 635 So.2d 809, 810 (Miss.1993), the Court granted leave to file a post-conviction relief petition after finding that the defendant's attorneys were ineffective during the sentencing phase. The attorneys failed to present all available mitigating evidence and the Court found that prejudice resulted to Woodward.

¶40. In ***Leatherwood v. State***, 473 So.2d 964, 970 (Miss.1985) this Court considered a death penalty case in which the defense had called only four witnesses in mitigation although others were apparently available. The Court found:

> Although, complaints of uncalled witnesses are not favored because presentation of testimony is a matter of trial strategy, ***Boyd v. Estelle***, 661 F.2d 388, 390 (5th Cir.1981), the failure to call

available witnesses on critical issues is a factor to be considered under the totality of the circumstances. . . In view of the importance of mitigating evidence in the sentencing phase it is difficult to understand why favorable, willing witnesses who could be discovered by questioning the defendant would not be called. If it were within the financial ability of the defendant to arrange for the appearance of a representative group of them, this would have a strong bearing on whether trial counsel provided effective assistance. Of course, counsel's overall performance must be considered.

*Id*. at 970.

¶41. Under the totality of the circumstances here, the Court finds that this issue should be presented to the trial court for a full hearing. Burns has made a sufficient allegation of ineffective assistance of counsel in the failure to put on any mitigating evidence when several witnesses were willing to testify for Burns at the sentencing phase. Although it is entirely possible that the decision not to present any mitigation witnesses was defensible as trial strategy, absent explanatory testimony, the Court finds that leave to file a motion for post-conviction relief should be granted on this claim.

### VIII. INEFFECTIVE ASSISTANCE IN PRESENTING THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL.

¶42. Burns complains that he was not present during argument before the court on his motion for judgment notwithstanding the verdict and that he was not consulted about the content of that motion. Other than general precedent which recites that a defendant has the right to be present at all critical stages of his trial, Burns cites no cases which hold that the defendant's presence at the hearing on his post-trial motions is required. Furthermore, he alleges no prejudice from his absence from the hearing nor does he make any objection to the content of those motions. This Court has held that "the presence of the defendant is neither necessary nor desirable" at hearings on post-trial motions. *Stokes v. State,* 240 Miss. 453, 476, 128 So.2d 341, 350 (1961). This claim for relief is therefore denied.

### IX. INEFFECTIVE ASSISTANCE ON DIRECT APPEAL.

¶43. Burns claims that his attorneys on appeal were ineffective in their presentation of the issues on appeal. He claims that his attorneys should have raised the issues concerning the jury selection process and the drawing of the special venire discussed previously. As no prejudice has been shown with regard to those issues, the failure to raise them on appeal does not amount to ineffective assistance of counsel.

¶44. He also now claims that his attorneys should have presented an issue on appeal about the testimony of Carrie Cryder. Cryder testified that he had seen Burns collect a package from behind the trailer where he had lived at the time of the murder and that Burns had presumably thrown it off a bridge. At trial the defense made a motion in limine to prohibit Cryder's testimony in which he argued that the testimony would be irrelevant to the case. The trial court denied the motion and Cryder was allowed to testify. Burns now claims that his attorneys should have raised that ruling in the direct appeal. Importantly, Burns now makes no argument that the issue with respect to Cryder's testimony would have been successful on appeal. In fact, that argument on appeal would have been meritless. Janie Taylor had testified that she had seen Burns with Cryder and that Burns had with him a bundle which appeared to be several tools wrapped in the shirt he was wearing on the night of the crime. Taylor's testimony was generally corroborated by Cryder who added that Burns had gone down to a bridge with the package and had returned without it. The failure to raise the issue of the relevance of Cryder's testimony caused no prejudice to Burns because the appellate

court would have found the testimony concerning Burns's suspicious disposal of the presumed murder weapons to be relevant.

¶45. Burns also claims that his attorneys on appeal were ineffective in presenting issues which had no merit. He claims that his attorneys should not have raised issues pertaining to his request for a manslaughter instruction, allegations of prosecutorial misconduct, and improperly defined aggravators. Given that Burns has in no way shown that his appeal suffered by the fact that his attorneys raised issues which proved to be unsuccessful, the Court now finds that while the Court did not find reversible error in those issues on appeal, the decision to present them was not ineffective assistance of counsel. Choosing which issues to raise and which to omit is a matter of strategy which should be left to an attorney's discretion.

### X. THE HANDWRITING EXEMPLARS WERE TAKEN IN VIOLATION OF BURNS'S CONSTITUTIONAL RIGHTS AND SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE.

¶46. Burns asks the Court to reconsider its ruling that the handwriting samples obtained from Burns under false circumstances was not reversible error. Solely to obtain a known handwriting sample from Burns, the Lee County Sheriff asked Burns to write a list of names of persons to be placed on the visitors list. The resulting exemplars were compared to the letters to Kohlheim by the State's handwriting expert who found a high probability that the writers were the same person.

¶47. In his direct appeal, Burns argued that the handwriting samples had been taken in violation of his constitutional rights. The Court held that:

> we find that there is no privacy interest in handwriting. Burns' handwriting was obtained for the narrowly tailored purpose of comparing a known sample of his writing to the letters that the district attorney believed he wrote to Kohlheim--letters in which he discusses killing McBride. In his brief, Burns briefly focuses on the fact that the exemplar was obtained by false pretenses. Again, if there is no Fourth Amendment privacy expectation in handwriting, there is no constitutional violation involved in not being entirely truthful in obtaining it.

*Burns*, 729 So.2d at 215-16.

¶48. This matter is therefore procedurally barred. The post-conviction relief statutes prohibit relitigation of an issue previously addressed on direct appeal. Miss Code Ann. § 99-39-21(1) (Supp. 2000). *Foster v. State*, 687 So.2d 1124, 1135 (Miss.1996) ("[P]ost-conviction relief is very limited and deals with only those issues undetectable at trial or the appellate level."). *See also Wiley v. State*, 750 So.2d 1193, 1208 (Miss.1999).

¶49. Burns cites *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In that case the Supreme Court held that certain handwriting exemplars could be used as evidence because they were not testimonial or communicative in nature. *Id*. at 266, 267. The Court found that the content of the exemplars was not communicative. Here, the content of the samples is also irrelevant. There were no admissions or any other statements of evidentiary worth. The substance of Burns's visitation list had no bearing on the case and was not prejudicial in the least to Burns.

¶50. Notwithstanding the procedural bar, the Court correctly decided this issue in the direct appeal. We reiterate our holding that there is no expectation of privacy in one's handwriting. *Burns,* 750 So.2d at 215

(citing *United States v. Mara*, 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973)). Therefore, Burns suffered no constitutional deprivation in the taking of his handwriting samples, even though the samples were taken by trickery. The Court also finds that the admission of the handwriting exemplars was harmless error even if error at all. The letters to Kohlheim had Burns's fingerprints on them. The fingerprints were completely unexplained. This issue is therefore without merit.

## XI. THE ISSUES RAISED IN BURNS'S PRO SE APPLICATION.

¶51. Before counsel was appointed to represent Burns in his post-conviction proceedings, he filed a pro se petition for post-conviction relief. In that petition, he raised ineffective assistance of counsel at trial, at the sentencing phase, and on direct appeal. The supplemental filing filed by his appointed attorney addressed those claims in detail and those issues have been discussed herein. Burns also alleged that the State had failed to reveal exculpatory evidence. Additionally, he claimed that other factual claims would be presented in his supplemental filing. Those claims have not been addressed by counsel in the supplemental filing and were not briefed in the pro se application. Those issues are therefore without merit.

## CONCLUSION

¶52. The majority of the claims raised by Burns are barred or are without merit. However, the Court finds that Burns has made a sufficient showing of ineffective assistance of counsel at the sentencing phase. It is difficult to say that Burns was not prejudiced by his attorneys' decision not to call any witnesses in mitigation. He has presented affidavits from friends and family members whose testimony might have been decisive at the sentencing phase. Additionally, he has submitted affidavits from three jurors who state that they would have considered background information and evidence of Burns's family relationships. The Court therefore finds that the petition to proceed in the trial court be granted on that issue alone and that Burns should be allowed to pursue that claim at a hearing before the Lee County Circuit Court. In all other respects Burns's motion is denied.

¶53. **MOTION FOR LEAVE TO FILE PETITION FOR POST-CONVICTION RELIEF GRANTED IN PART AND DENIED IN PART.**

**BANKS, P.J., MILLS, WALLER AND DIAZ, JJ., CONCUR. McRAE, P.J., COBB AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**