ISHEE, J., for the Court:
 

 ¶ 1. In April 2009, Demetrius McNutt pleaded guilty in the Jackson County Circuit Court to murder and felony evading arrest. McNutt was sentenced to life in the custody of the Mississippi Department of Corrections (MDOC) for murder and five years for felony evading arrest, with the sentences to run concurrently. In March 2010, McNutt filed a motion for post-conviction relief (PCR) in the circuit court, claiming that he had received ineffective assistance of counsel and that his guilty pleas were involuntary. The circuit court denied McNutt’s PCR motion on April 16, 2010. McNutt then filed the instant appeal. Finding no error, we affirm the circuit court’s judgment.
 

 STATEMENT OF FACTS
 

 ¶ 2. In 2005, McNutt was convicted in Alabama of possession of a controlled substance and was released on probation. In October 2007, McNutt was driving in Jackson County, Mississippi, when he was pur
 
 *1265
 
 sued by police officers who motioned for him to pull over his vehicle. McNutt refused to comply with the officers’ requests; instead, he attempted to evade the officers. McNutt ultimately crashed into a telephone pole and was caught while trying to escape on foot near the scene of the accident. Because McNutt was still on probation, he was charged with felony evasion and released on bond pending a trial.
 

 ¶ 3. Approximately six months later, on the night of April 13, 2008, McNutt received a phone call from Christopher Coleman, informing him that Coleman had a robbery lined up that evening in which McNutt had previously agreed to participate. Subsequently, Coleman drove to McNutt’s house to pick him up, and McNutt entered the vehicle armed with a .22-caliber handgun. McNutt then hid himself from view by lying down on the backseat of Coleman’s car.
 

 ¶ 4. Coleman drove them to meet Brent Jackson, who was driving a vehicle Coleman and McNutt knew contained drugs and money. Coleman met Jackson outside of an undisclosed building and stopped the car. McNutt exited the car and demanded that Jackson give McNutt the drugs and money Jackson had in his vehicle. McNutt testified that Jackson charged at him, and McNutt shot him twice. Jackson ultimately died of the gunshot wounds.
 

 ¶ 5. Coleman fled the scene in his car, and McNutt left in Jackson’s vehicle. Upon reconvening, Coleman and McNutt examined the drugs and $5,000 in cash from Jackson’s car. McNutt gave Coleman $250, and he gave Jackson’s vehicle away. He then obtained a different vehicle and fled with the drugs and remaining money. Sometime later, the police became aware of McNutt’s location and arrested him on the charge of felony murder, or capital murder.
 

 ¶ 6. The State agreed to reduce the charge from capital murder to simple murder. On April 28, 2009, the circuit court held an arraignment hearing on the murder charge and the felony-evasion charge. The circuit court extensively questioned McNutt regarding his understanding of the charges and his recollection of the events on April 13, 2008. McNutt recounted the events of the evening and affirmed that he fully understood the charges against him and the consequences of pleading guilty. McNutt then pleaded guilty to murder and felony evasion. The circuit court sentenced McNutt to life in the custody of the MDOC for the murder charge and five years in the custody of the MDOC for the felony-evasion charge, with the sentences to run concurrently.
 

 ¶ 7. McNutt timely filed a PCR motion in the circuit court alleging ineffective assistance of counsel and alleging he gave involuntary guilty pleas. The circuit court denied McNutt’s PCR motion, which McNutt now appeals. Finding no error, we affirm.
 

 DISCUSSION
 

 I. Ineffective Assistance of Counsel
 

 ¶ 8. It is well settled that in order for a defendant to prevail on an ineffective-assistance-of-counsel claim, he or she must “show by a preponderance of the evidence (1) that counsel’s performance was deficient, and (2) but for the deficiencies, the trial court outcome would have been different.”
 
 Jones v. State,
 
 976 So.2d 407, 410-11 (¶ 6) (Miss.Ct.App.2008) (quoting
 
 Ward v. State,
 
 914 So.2d 332, 336 (¶ 12) (Miss.Ct.App.2005)). Additionally, under
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show “that counsel’s errors were so serious as to deprive the defendant of a fair trial.” Finally, “a presumption exists that the attorney’s conduct was adequate.”
 
 Hull v. State,
 
 983 So.2d 331, 333-34 (¶ 11) (Miss.Ct.App.2007) (cit
 
 *1266
 
 ing
 
 Burns v. State,
 
 813 So.2d 668, 673 (¶ 14) (Miss.2001)).
 

 ¶ 9. McNutt asserts that his counsel was ineffective for failing to investigate the facts and circumstances of the murder charge independently and introduce exculpatory evidence demonstrating that Coleman was the mastermind of the crime, and not McNutt. McNutt further claims that his lawyer’s failure to investigate is reversible error because he should have been charged with manslaughter since he only shot Jackson after Jackson charged at him. Finally, McNutt states that his counsel was ineffective by failing to interview Coleman and scout the scene of the crime for other potential eyewitnesses.
 

 ¶ 10. In support of his claim that the killing of Jackson was manslaughter due to a theory of self-defense, McNutt states in his appellate brief that his counsel “could have discovered that [McNutt] was at home [,] and that Coleman brought the victim to [McNutt’s] residence and involved [McNutt] in the crime.” Despite McNutt’s repeated assertions on appeal that he was merely an innocent bystander of the crime, McNutt’s testimony to the contrary at his guilty-plea hearing contradicts this claim. In particular, McNutt stated that he had previously discussed the robbery in question with Coleman, and Coleman called him on the night of April 13, 2008, to inform him that the circumstances were prime to complete the robbery of Jackson’s vehicle. McNutt further testified that he voluntarily got into Coleman’s car with a .22-caliber handgun and hid himself from view in anticipation of meeting up with Jackson to rob him. McNutt stated that he exited Coleman’s vehicle with his gun and told Jackson: “Give it up. Give me what you got.” Jackson then charged McNutt, and McNutt admitted that he shot Jackson twice, “[o]ne in the shoulder and the other one in the chest.” Finally, when asked to describe Coleman’s involvement in the crime, McNutt stated that Coleman’s job was to set up Jackson and that McNutt and Coleman had talked prior to the night of the incident about how the robbery was to be committed.
 

 ¶ 11. As such, McNutt cannot now refute the testimony he gave under oath with mere allegations that his counsel failed to investigate the case properly. McNutt explained in full detail for the circuit court exactly what happened on the night of the murder, and he admitted he killed Jackson during the commission of an armed robbery. This Court has stated: “Great weight is given to statements made under oath and in open court during sentencing.”
 
 Ward v. State,
 
 879 So.2d 452, 455 (¶ 11) (Miss.Ct.App.2003) (quoting
 
 Gable v. State,
 
 748 So.2d 703, 706 (¶ 11) (Miss.1999)). Furthermore, “ ‘the trial court may dismiss a motion for post-conviction relief if the [movant] fails to submit affidavits in support of his allegations’ of ineffective assistance; his own bare assertions are insufficient.”
 
 Mason v. State,
 
 42 So.3d 629, 633 (¶ 11) (Miss.Ct.App.2010) (quoting
 
 Mayhan v. State,
 
 26 So.3d 1072, 1076 (¶ 10) (Miss.Ct.App.2009)).
 

 ¶ 12. Finally, McNutt’s testimony reflects that he was aware of the charges and the consequences of pleading guilty to the charges before he entered his guilty pleas. The circuit court thoroughly explained the process of pleading guilty, and the court also explained the alternative of sending the case to trial, as well as the potential outcomes of both options. As such, McNutt has failed to prove his ineffective-assistance-of-counsel claims. We find this issue is meritless.
 

 II. Voluntariness of Guilty Pleas
 

 ¶ 13. When reviewing the volun-tariness of guilty pleas, an appellate court “will not set aside findings of a trial court
 
 *1267
 
 sitting without a jury unless such findings are dearly erroneous.”
 
 Walton v. State,
 
 16 So.3d 66, 70 (¶ 8) (Miss.Ct.App.2009) (quoting
 
 House v. State,
 
 754 So.2d 1147, 1152 (¶ 24) (Miss.1999)). Additionally, “[t]he burden of proving that a guilty plea is involuntary is on the defendant and must be proven by preponderance of the evidence.”
 
 Id.
 
 (citation omitted). “To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea.”
 
 Burrough v. State,
 
 9 So.3d 368, 373 (¶ 11) (Miss.2009).
 

 ¶ 14. Notwithstanding the fact that McNutt bases his legal arguments on federal rules of criminal procedure and federal law, as opposed to the applicable state court rules and law, he argues that the record lacks a factual basis to support his guilty pleas. Again, having reviewed the transcript from the arraignment, it is clear that McNutt’s assertions that “the [circuit] court merely had the prosecution to relate the charges in which [McNutt] was to plead guilty” is blatantly false. The circuit court extensively questioned McNutt about the events on the night in question, and the circuit judge instructed McNutt to tell the circuit court, in his own words, exactly what happened on that night. McNutt complied and described in exact detail his commission of Jackson’s murder and his felony evasion.
 

 ¶ 15. Because it is evident from the record that McNutt voluntarily and intelligently admitted to committing both crimes describing his part in them in detail, his argument that the record lacks factual bases for his guilty pleas fails. As stated previously, the record also supports the circuit court’s exhaustive explanation and questioning of McNutt regarding his involvement in the crimes, the consequences of the crimes, and McNutt’s options to plead guilty or set the case for trial. Accordingly, we find this issue is meritless.
 

 ¶ 16. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.