# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-00858-COA

**WILLIAM TEDDER A/K/A WILLIAM P. TEDDER**                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM TEDDER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA AINSWORTH |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DISMISSED MOTION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In 2007, William Tedder pleaded guilty in the Madison County Circuit Court to four counts of aggravated assault on a law-enforcement officer and one count of felony evasion. In exchange for the State dropping the felony-evasion charge, Tedder agreed to plead guilty to the remaining four counts of aggravated assault on a law-enforcement officer. Tedder was sentenced to thirty years in the custody of the Mississippi Department of Corrections (MDOC) on each count, with twenty-seven years to serve, and with all counts to run concurrently to each other but to run consecutively to a related federal conviction. In 2014,

Tedder filed a motion for post-conviction relief (PCR) in the circuit court, claiming he was denied effective assistance of counsel and that his Fifth, Sixth, and Fourteenth Amendment rights had been violated. The circuit court dismissed Tedder's PCR motion as time-barred, but noted as a sidebar that the motion lacked merit. Aggrieved, Tedder now appeals. Finding no error, we affirm.

**STATEMENT OF FACTS**

¶2. Tedder was involved in the armed robbery of a bank in Hinds County, Mississippi, and a subsequent car chase into Madison County, Mississippi, where he was apprehended. Specifically, during the car chase Tedder sideswiped multiple police cars and pointed a gun at multiple police officers. Tedder was charged in the circuit court with four counts of aggravated assault on a law-enforcement officer and one count of felony evasion. He also faced a bank-robbery charge in federal court, for which he was later convicted.

¶3. Tedder had been convicted of a prior bank robbery, a car theft, and a burglary, therefore making him eligible for the State to seek a violent-habitual-offender enhancement – an enhancement carrying a mandatory sentence of life in prison without early release. During plea negotiations, the State agreed to cease its pursuit of the felony-evasion charge, which would also remove Tedder's status as a violent habitual offender, if Tedder entered a guilty plea to the four counts of aggravated assault on a law-enforcement officer. By eliminating the felony-evasion charge, and hence the habitual-offender enhancement, the maximum sentences Tedder could receive were consecutive sentences of thirty years for each charge.

¶4. During the plea hearing, the circuit judge thoroughly inquired as to Tedder's understanding of his plea and the consequences of the plea, including the potential sentences with and without the felony-evasion charge. The circuit judge also questioned numerous parties, including Tedder, to ensure that there was a substantial factual basis for the plea. The State noted that it had thirteen law-enforcement officers subpoenaed and ready to testify – all of whom had witnessed Tedder's crimes. The State then offered the following as a summary of the factual basis and evidence it would present to a jury should the case reach a trial:

> . . . [O]n Tuesday, October 10th, 2006, there was a bank robbery that occurred within the city limits of Jackson, Mississippi, at . . . Trustmark Bank. And as a result of that bank robbery, a pursuit developed . . . with primarily two Hinds County Sheriff[] cars. The chase came into Madison County; and by that time, [the] Jackson Police Department, Hinds County Sheriff's Department, Madison County Sheriff's Department, Ridgeland Police Department, Mississippi Highway Patrol, . . . the [C]ity of Madison Police Department, and all available officers . . . were alerted to the chase. . . . The suspect driver . . . was later determined to be this defendant, Mr. Tedder. The vehicle first entered the city limits of the [C]ity of Madison . . . on I-55 north in speeds in excess of a hundred miles an hour. Two Hinds County Sheriff's Department vehicles were in close proximity to the suspect vehicle and were attempting to safely stop the suspect. [The s]uspect was resisting by continuing to drive at an excessive rate of speed and weaving in and out of traffic and onto the shoulders [of the road], all of which is depicted in a videotape, which was taken by WLBT, which is the NBC affiliate[,] local Jackson-metro-area television station.
>
> This defendant sideswiped those two deputies' patrol cars, in an attempt to throw them off the road. With respect to Hinds County Sheriff[] vehicle number 24544, [Tedder] also brandished and exhibited a firearm at the two deputies [who] were in that car, and those two deputies are the subjects, or the victims, rather, of counts one and two. As this continued, the pursuit continued north and went out of the city limits of Madison. And as it went past the Gluckstadt exit, [Tedder] did a 180 and began going southbound on I-55. He entered the Madison city limits [again]. And at this point, there were

still two Hinds County [Sheriff] vehicles in close proximity. And at this point, [Tedder] sideswiped Hinds County Sheriff[] vehicle number 2436 on the right front bumper, again attempting to divert those cars off the road and cease the pursuit by those deputies. Those two deputies in that vehicle are named in counts three and four.

. . . [T]here was film shot by WLBT. The State has that tape. I've shown it to [Tedder's] counsel, and it clearly shows this defendant being recovered out of the [vehicle] at the conclusion of the chase.

The circuit judge asked Tedder if he had any disagreement with the summary provided by the State, to which Tedder said, "No, sir." The circuit judge also asked Tedder's defense counsel if she had any disagreement with the factual basis, to which she also replied, "No, sir, your Honor."

¶5. The circuit judge went on to question Tedder as to whether his plea was being "freely, voluntarily, knowingly[,] and intelligently made and entered." The following dialogue occurred:

COURT: Are you telling the court that you're freely and voluntarily admitting your guilt to the crimes that you are pleading guilty to?

TEDDER: Yes, sir, I do.

COURT: Are you pleading guilty because you are guilty and for no other reason?

TEDDER: Yes, sir, it's in my best interest.

COURT: All right, are you pleading guilty because you believe that based on the evidence the State would present at trial, the probability of your conviction is more likely than your acquittal, and you wish to take advantage of the plea bargain offered by the State?

TEDDER: Yes, sir, I do.

4

. . . .

COURT:     Do you understand if the court accepts your guilty plea, you would have no right to appeal your sentence?

TEDDER:    Yes, sir.

COURT:     Are you satisfied with your attorney's representation of you?

TEDDER:    Yes, sir.

COURT:     Do you have any complaints you wish to make against her?

TEDDER:    No, sir.

COURT:     Do you have any questions concerning your rights or the crimes you are pleading guilty to?

TEDDER:    No, sir.

¶6. After hearing the State's recommendation for sentencing, the circuit judge asked Tedder if it was the recommendation he expected to hear, to which Tedder responded, "Yes, sir." The circuit judge then said: "At this point, it's not too late to stop the hearing, but it will be if I accept your guilty plea; and I want to be certain you want to plead guilty. Do you want to plead guilty?" Tedder stated: "Yes, sir." He then pleaded guilty to four counts of aggravated assault on a law-enforcement officer. The circuit judge accepted Tedder's guilty plea, and a sentencing hearing was set for August 6, 2007.

¶7. At the sentencing hearing, Tedder attempted to withdraw his guilty plea, asserting that he had received ineffective assistance of counsel. He claimed he had requested "some evidence to be brought forward and reviewed," but had not heard back from his counsel until the day of his plea hearing. At that point, Tedder claimed he "was told [he] had five minutes

5

to plead guilty, or [he would] do life without parole." Accordingly, Tedder asserted that he was under duress when he pleaded guilty.

¶8.     The circuit judge gave Tedder's counsel the opportunity to speak, at which point she stated:

> All the evidence that I've seen, he has seen. And he was brought out in open court, and this matter was addressed on the date that he decided to enter his guilty plea. At the time he entered his guilty plea, he certified to this court that it was his decision, and it was his decision alone, and he was satisfied with counsel on the date that he entered the guilty plea.
>
>  . . . .
>
> [H]e has seen all the evidence save the videotape, and I have watched that, and I am satisfied that it was him on the videotape. I told him this morning that I would make arrangements, if he wanted to see that, for him to see that. But he has seen every statement that I've seen, and he has everything that I had.

¶9.     The circuit judge then asked to hear from the State. The State complied and said:

> As you know, now that you have reviewed the presentence report prepared by the [MDOC], this man is a career criminal. This is a very common tactic of career criminals, to wait until the last minute and try and disrupt the trial process.
>
> . . . .
>
> He has already said under oath that he was satisfied with the efforts of [his counsel]. Quite frankly, your Honor, his complaint is not as to her legal skills, because she is an excellent attorney. His complaint is that she is not a magician, and she can't make this evidence go away; it is overwhelming. And I have the tape that was filmed by a local television station as the crime was in its final stages that I am prepared to show the court, hopefully in a sentencing setting. But in any event, the tape, together with the eye[]witness testimony of, not only the four deputies that were the named victims in the four counts of aggravated assault on law enforcement, but, your Honor, there are at least nine, and probably if I wanted to, I could probably bring thirty officers in here. It's not that difficult of a case.

6

Plus, your Honor, on top of that, you'll note from the presentencing report there, that the armed bank robbery that occurred down in Hinds County, which was the genesis of the crimes in Madison County, he has already pled guilty to that and been sentenced in federal court. So this is just a delay tactic. He has not demonstrated any prejudice, and certainly no undue prejudice.

¶10. The circuit judge then played the videotape in question so that Tedder and counsel for both parties could review the evidence. After seeing the videotape, the circuit judge again questioned Tedder and counsel for both sides regarding all evidence available on the case. Despite the fact that all available evidence had been brought forth and seen by Tedder, Tedder continued to insist that he had received ineffective assistance of counsel. The circuit judge asked Tedder why, when questioned at the plea hearing about his satisfaction with his counsel's performance, he did not have any complaints. Tedder responded that he "was under a great deal of stress at that point, because [he] was threatened with life without parole, life without the possibility of parole," for which he maintained he would not qualify.

¶11. The circuit judge then asked the State whether Tedder would qualify as a violent habitual offender, and hence a sentence of life without parole. The State responded that Tedder would qualify as a violent habitual offender under the statute if he were found guilty of felony evasion – the charge that was removed as a result of plea negotiations. Specifically, the circuit judge stated: "[L]ooking at your presentence investigation report, . . . you had five felony convictions before you stood before me on your guilty plea. One of those, bank robbery, which is a crime of violence." The circuit judge summarized Tedder's circumstances by stating:

> The point in all of that is that, as a [previously] convicted felon, whether it was one in which he was prosecuted as a violent habitual or as a nonviolent

7

habitual, he would spend the rest of his life in the penitentiary if he were convicted, because those aggravated assaults on a law[-]enforcement officer carr[y] 30 years [each.]

. . . .

So if [your counsel] did in fact say to you that you were subject to serving the rest of your life in the penitentiary, I think she was accurate. Because if a jury would have convicted you, there would have been but one sentence had the State proceeded to try you as a nonviolent habitual offender. [Furthermore,] this case is relatively early in the process, so a continuance could have easily been obtained by the State to allow you to serve the one year in the federal penitentiary to prosecute you as a violent habitual offender.

. . . .

Now, but the issue that we need to deal with is that you're claiming ineffective assistance of . . . counsel. And thus far, it does not sound to me that you have complained about anything that has caused you any wrongdoing. You've not, as I can see, complained on – not shown anything that she has done wrong or anything that she has done wrong [that] has affected you in any substantial way.

¶12. The circuit judge recounted Tedder's statements during his plea hearing, focusing on the close of the hearing. The circuit judge said:

[J]ust before I take your guilty plea, and there is a reason that I do this, I asked, or I said to you, "At this point it's not too late to stop the hearing, but it will be if I accept your guilty plea, and I want to be certain you want to plead guilty." And I said, "Do you want to plead guilty?" And you said yes. And then, as a final step, I say, "Do you have any questions?" You had repeated points throughout your guilty plea in which you had every opportunity to complain about [your counsel] or anything else in which you think you have been mistreated.

¶13. Having found that Tedder did not present a sufficient basis to set aside his guilty plea, the circuit judge proceeded with the sentencing portion of the hearing. The circuit judge heard from Tedder, Tedder's mother, and the four law-enforcement officers associated with

8

Tedder's charges. After considering all of the evidence and testimony, the circuit judge sentenced Tedder to thirty years on each of the four counts, with twenty-seven years to serve, and with the sentences to run concurrently with each other but consecutively to his federal sentence for the bank robbery. Seven years later, Tedder filed a PCR motion in the circuit court challenging the circuit judge's refusal to allow him to withdraw his guilty plea. The PCR motion was dismissed as time-barred, but also found to be without merit. Tedder now appeals the dismissal of his PCR motion.

**DISCUSSION**

¶14. Mississippi Code Annotated section 99-39-5 (Supp. 2014) governs PCR motions. The statute provides that a prisoner has three years within which to request post-conviction relief. After that time, only certain cases are excepted from the procedural bar. Exceptions to the three-year statute of limitations are as follows:

> That there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of [the movant's] conviction or sentence or that [the movant] has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence; or . . . [t]hat, even if the petitioner pled guilty or nolo contendere, or confessed or admitted to a crime, there exists biological evidence not tested, or, if previously tested, that can be subjected to additional DNA testing that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the [movant] would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution. . . . Likewise excepted are those cases in which the [movant] claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked. Likewise excepted are filings for post-conviction relief in capital cases which shall be made within one (1) year after conviction.

9

Miss. Code Ann. § 99-39-5(2)(a)-(b).

¶15. Here, Tedder has failed to raise or establish any exception to the statute of limitations. Rather, he claims that a "doctrine of equitable tolling" should apply to except his case from the time-bar. However, the Mississippi Supreme Court has declined to adopt the doctrine of equitable tolling to non-death-penalty cases. In *Puckett v. State*, 834 So. 2d 676, 679 (¶13) (Miss. 2002), the supreme court stated that the doctrine of equitable tolling "should only be applied in rare and exceptional circumstances. The doctrine may be applied when a movant files in an untimely fashion due to extraordinary circumstances which are both beyond his control and unavoidable even in the exercise of due diligence." (Internal citation omitted). The supreme court went on to hold the following: "While other jurisdictions have applied the doctrine of equitable tolling to non-capital cases, we do not do so today; the fact that [the defendant] is under a sentence of death and subject to a shortened one[-]year statute of limitations weighs heavily in this decision." *Id*. at 681 (¶17).

¶16. Likewise, this Court has declined to apply the doctrine to non-death-penalty cases. *See Smith v. State*, 933 So. 2d 1008, 1011 (¶¶10-11) (Miss. Ct. App. 2006). In *Smith*, we noted the supreme court's ruling in *Puckett* and determined that the doctrine of equitable tolling should only apply to death-penalty cases. Furthermore, in refusing to invoke the doctrine of equitable estoppel in non-death-penalty cases, we reemphasized that to avoid the statute of limitations, a movant must establish that his petition is untimely due to extraordinary circumstances beyond his control. *Id*.

¶17. Tedder's conviction was not subject to the death penalty, and thus was not eligible for

application of the doctrine of equitable estoppel. Additionally, Tedder failed to show extraordinary circumstances of any sort that would explain why his PCR motion was four years past the statute of limitations. Tedder's only claim on point is that he attempted to contact his attorney by letter to request an appeal of his case. However, his only evidence of this assertion is his own sworn affidavit and a certified-mail receipt with no indication of actual delivery. Moreover, the entry of a valid guilty plea serves as a waiver to a movant's right to appeal the conviction. *Williams v. State*, 158 So. 3d 1171, 1174 (¶7) (Miss. Ct. App. 2014) (citing *Anderson v. State*, 577 So. 2d 390, 391 (Miss. 1991)).

¶18. Regardless, the heart of Tedder's claim revolves around his argument that the circuit court erred in refusing to set aside his guilty plea. According to Tedder, he never entered a valid guilty plea. We find this issue to be without merit.

¶19. When reviewing the voluntariness of guilty pleas, "[a]n appellate court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous." *Walton v. State*, 16 So. 3d 66, 70 (¶8) (Miss. Ct. App. 2009) (quoting *House v. State,* 754 So. 2d 1147, 1152 (¶24) (Miss. 1999)). Additionally, "[t]he burden of proving that a guilty plea was involuntary is on the defendant and must be proven by a preponderance of the evidence." *Id.* (citation omitted). "To determine whether the plea is voluntarily and intelligently given, the trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea." *Burrough v. State*, 9 So. 3d 368, 373 (¶11) (Miss. 2009).

¶20. The record is clear that the circuit court judge thoroughly reviewed with Tedder his

rights, the charges against him, and the consequences of both pleading guilty to the charges and going to trial. Tedder has failed to present us with proof that his plea was not voluntarily and intelligently given. Rather, he makes unsubstantiated assertions that he received ineffective assistance of counsel and that this led to him improperly pleading guilty to the charges as well as his untimely filing of the PCR motion.

¶21. It is well settled that in order for a movant to prevail on an ineffective-assistance-of-counsel claim, he must "show by a preponderance of the evidence '(1) that counsel's performance was deficient, and (2) but for the deficiencies, the trial court outcome would have been different.'" *Jones v. State*, 976 So. 2d 407, 410-11 (¶6) (Miss. Ct. App. 2008) (quoting *Ward v. State*, 914 So. 2d 332, 336 (¶12) (Miss. Ct. App. 2005)). Additionally, under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a movant must demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial." Finally, "a presumption exists that the attorney's conduct was adequate." *Hull v. State*, 983 So. 2d 331, 333-34 (¶11) (Miss. Ct. App. 2007) (citing *Burns v. State*, 813 So. 2d 668, 673 (¶14) (Miss. 2001)).

¶22. The record indicates that Tedder claimed that he received ineffective assistance of counsel due to an alleged failure of his counsel to bring forth more evidence in his case. However, in addition to ensuring that Tedder was satisfied with his counsel's performance at the plea hearing, the circuit court judge also took the opportunity at the sentencing hearing in the presence of Tedder to examine all of the evidence before the court as well as all potential evidence. The circuit court judge then fully questioned Tedder and counsel for both

parties regarding the evidence against Tedder. We fail to follow Tedder's argument that more evidence existed that was not brought forward by his counsel.

¶23. Furthermore, the only direct evidence Tedder cites in support of his claim that his counsel was deficient in failing to file an appeal is Tedder's sworn but unsubstantiated affidavit and a certified-mail receipt that lacks evidence of delivery. Moreover, Tedder had no right to appeal his conviction since he pleaded guilty to the charges. As such, while we note that Tedder's claims are procedurally barred by the statute of limitations, we also find his claims to be meritless.

¶24. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND JAMES, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.**