635 So.2d 805 (1993)
Paul Everette WOODWARD
v.
STATE of Mississippi.
No. 03-DP-0081.
Supreme Court of Mississippi.
October 7, 1993.
Rehearing Denied December 23, 1993.
*807 Terryl K. Rushing, Alston Rutherford Tardy & Van Slyke, Jackson, Elizabeth DeCoux, Indianapolis, IN, for petitioner.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Jackson, for respondent.
En Banc.

ON ORIGINAL AND SUPPLEMENTAL MOTION TO VACATE JUDGMENT AND DEATH SENTENCE

PRATHER, Presiding Justice, for the Court:

PROCEDURAL HISTORY
Paul Everett Woodward was found guilty of capital murder and sentenced to death by the jury on April 29, 1987. On direct appeal, this Court affirmed Woodward's conviction. Woodward v. State, 533 So.2d 418 (Miss. 1988). Woodward's Petition for Writ of Certiorari to the United States Supreme Court was denied on April 17, 1989. Woodward v. Mississippi, 490 U.S. 1028, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989).
On September 26, 1989, Woodward filed in this Court his Application for Leave to File Motion to Vacate Judgment and Death Sentence. On November 20, 1990, Woodward filed an Application for Leave to File Amendment and Supplement to Motion to Vacate Judgment and Death Sentence, raising an additional issue based on the United States Supreme Court decisions in Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), and Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). The Court accepted this Supplemental Application on December 5, 1990. Woodward raises eleven issues for consideration by the Court.
Because the sentence of death must be reversed under the Clemons decision, this Court discusses only the issue of ineffective assistance of counsel and the issues affecting the guilt portion of the trial.

ANALYSIS

I. Whether the Admission of a Sample of Woodward's Blood Which Was Obtained Without a Warrant Was Error for Which the Conviction Should Be Set Aside.
Woodward did not raise this issue on direct appeal. Normally, Miss. Code Ann. § 99-39-21(1) (Supp. 1993) directs that an issue not raised on direct appeal be deemed waived, unless the petitioner can meet his burden to show cause and actual prejudice. "Cause" is "defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal." Miss. Code Ann. § 99-39-21(4) (Supp. 1993). "Actual prejudice" is "defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence. Miss. Code Ann. § 99-39-21(5) (Supp. 1993).
Woodward cannot meet the test of cause. Here, the basis of the Fourth Amendment objection to the admission of illegally obtained evidence is certainly by now deeply rooted and well known. This Court has a long tradition of reversing convictions based on the admission of illegally obtained evidence. See Lewis v. State, 198 Miss. 767, 23 So.2d 401 (1945). As for actual prejudice, under the weight of the evidence against him, including written and videotaped confessions, Woodward had practically no chance of escaping conviction even without this evidence. This issue is barred by the waiver of Miss. Code Ann. § 99-39-21(1) (Supp. 1993).

II. Whether Defense Counsel's Performance at Trial and on Direct Appeal was Constitutionally Ineffective.
This is the one issue which the State admits is not procedurally barred. Indeed, this Court has noted that a defendant is entitled to one opportunity to raise this issue. Perkins v. State, 487 So.2d 791, 792-93 (Miss. 1986). Where the same counsel represents the defendant at trial and on direct *808 appeal, the claim is procedurally viable on application for post-conviction relief. Id. However, in order to receive a hearing on his claim of ineffective assistance, the post-conviction applicant to this Court must demonstrate with specificity and detail the elements of the claim. Id. at 793.
The law on ineffective assistance emanates from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland requires the defendant to demonstrate that his counsel was deficient and that the deficient performance prejudiced his defense. "The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Once a deficient performance is shown, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
In the present case, Woodward alleges numerous errors of counsel at both the guilt phase and the penalty phase of his trial.

A. Guilt Phase

Woodward alleges the following errors at the guilt phase of the trial:
1. His attorneys sat with their backs to him during the course of the trial because of their fear of violence from the audience, which resulted in giving the jury the impression that they were distancing themselves from him.
2. The attorneys made no opening statement and therefore failed to rebut victim character evidence injected by the State.
3. The attorneys failed to cross-examine ten (10) State witnesses, giving the impression that they had little faith in Woodward's case.
4. One attorney complimented the district attorney.
5. One attorney assisted a State witness in identifying Woodward.
6. The attorneys waived voir dire of some jurors.
7. The attorneys failed to use all of their peremptory challenges to the venire.
8. One attorney admitted that Woodward was guilty of kidnapping and murder, which caused the District Attorney to request a mistrial. Subsequently, the other attorney referred back to this candor during his own closing argument.
9. One attorney's closing argument negated a defense of consent.
It will suffice to say most of these assertions are either not borne out by the record or are inconsistent with a claim of ineffective assistance when placed in the context of circumstances under which they occurred. We choose to discuss only Woodward's allegation that his attorney admitted his guilt of the crime. In fact, the attorney admitted that Woodward was guilty of simple murder, not capital murder, and submitted a lesser-included offense instruction in accordance with the argument. The argument was that Woodward was guilty only of simple murder since his confession indicated that he shot the victim after the completion of the rape and while he was leaving the scene and that; therefore, the murder did not occur during the commission of the felony.
This Court has faced similar allegations in other cases, and found that the attorney's strategic decision to admit to a lesser crime than that charged in the indictment did not amount to deficient performance. In a very similar case to the one at bar, Wiley v. State, 517 So.2d 1373 (Miss. 1987), cert denied 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988), an attorney admitted in his opening statement that he thought the jury would find that his client shot the victim. The attorney's theory was that the shooting was not capital murder as charged in the indictment. Although this Court was concerned with this strategy and stressed the point that an attorney is not to stipulate to facts amounting to a guilty plea, this Court, nevertheless found that the attorney had made a strategic decision which did not amount to deficient performance. Id. at 1382.
Even more similar is Faraga v. State, 514 So.2d 295 (Miss. 1987), cert. denied 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 894 (1988), where the defense counsel admitted the defendant had committed simple murder in a *809 capital murder case and submitted an instruction in accordance with his admission. This Court in Faraga was also concerned about the attorney's admitting too much, but found the decision tactical and made in order to gain the jury's confidence and to attempt to mitigate the sentence. This Court found the argument "the best argument he could make given the circumstances under which he found his client." 514 So.2d at 308.
In the instant case, these attorneys similarly could not do much at the guilt phase of this trial. The evidence of guilt was overwhelming. In addition to separate written and videotaped confessions, which were properly admitted, the State presented a mountain of evidence. A housewife near the scene of the crime saw a white logging truck stopped in front of her house and a white man forcing a blonde woman in a yellow dress into his truck. After the truck drove off, the housewife found the victim's car on the highway, with the door open and the motor still running. A motorist reported to law enforcement officers that he saw a white logging truck moving away from a car with an open door on the highway. Woodward unquestionably was in the area that day, driving his white logging truck. His white logging truck was the only white logging truck at the logging mill. Law enforcement found a fountain pen at the crime scene matching pens found in Woodward's truck. Tests of Woodward's blood showed that he could not be excluded as the perpetrator. On the evidence presented, it is impossible to imagine a Mississippi jury that would not have convicted Woodward. He was "hopelessly guilty." Caldwell v. State, 481 So.2d 850 (Miss. 1985) (remanded on other grounds, Caldwell v. Mississippi, 479 U.S. 1075, 107 S.Ct. 1269, 94 L.Ed.2d 130 (1987).
Assuming for the sake of argument that Woodward's counsel was deficient in the guilt phase, he, in order to prevail on an ineffective assistance of counsel claim, must also show that the result of the guilt phase would have been different. The proof in the case does not present reasonable probability sufficient to "undermine confidence in the outcome." Strickland, 466 U.S. at 694. Thus, Woodward cannot show that he fulfills the prejudice prong of the Strickland test as to the guilt phase.

B. Penalty Phase

Errors Woodward alleges his attorney committed at the penalty phase include the following:
1. Defense counsel requested only half of the amount of time for closing argument that the State did.
2. Both counsel, during their closing arguments, stated that defending the case was a burden.
3. One of the attorneys stated on closing argument that he could not ask the jury to spare the defendant's life on the facts of the case.
4. Counsel had no family or friends to testify on mitigating evidence.
5. Counsel gave the prosecution confidential tapes of interviews between Woodward and his expert psychological witness.
6. Counsel did not interview the State's surprise rebuttal expert psychological witness prior to his testimony.
7. Counsel did not speak with their own expert witness until five (5) minutes before he testified.
The defense's proof in the sentencing phase contained almost no facts in mitigation upon which the jury could act to spare Woodward's life. As mentioned above, counsels' trial strategy was to admit to the crime and then hope to appeal to the jury for leniency in sentencing. Woodward's attorneys presented no defense in the guilt phase and in the sentencing phase. They made little effort to present mitigating circumstances to the jury.
On closing argument during the sentencing phase, one of Woodward's attorneys made the following statement:
I don't condone what he's done. That's known as redeeming love. You  it's a commandment that is the hardest thing in the world to do. You can't  it's just it's something that you got to do, if you're going to believe it, but it's hard to love somebody who's done something wrong to you. It's easy for us to go out and love people we like, or who like us  there's no merit in that. But, when you've got to love somebody that's trespassed against you, somebody that's hurt you bad, somebody that's done something difficult to you, *810 that's where the merit is. And that's what's called redeeming love. In this case, I realize that will probably never happen. I don't know. You say, how could you ask me to spare Paul Woodward's life? How could any lawyer come and ask you to do it? I can't ask you to do it on the facts. No, I can't. They're terrible. I'm going to be honest with you. I can't ask you to do it on the facts. There's only one way that I can ask you to spare his life, and that's on redeeming love. That's the only way. I know whatever your decision will be, it will be fair and just. Thank you.
(Emphasis added).
The counsel's statement above to the jury severely prejudiced any chance Woodward had to receive a life sentence from this jury. The Court's instructions to the jury, which they are presumed to follow, told them that they could consider the eight statutory mitigating circumstances[1] which included:
[A]ny other matter, any other aspect of the Defendant's character or record, and any other circumstances of the offense brought before you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the Defendant.
Redeeming love is not one of the eight factors which the jury could have considered under the court's instructions and therefore, defense's counsel's argument to the jury told them that they could not spare Woodward's life.
Defense counsel had to argue redeeming love because he and his co-counsel failed to present much of a case in mitigation. Their expert witness, Dr. Thurman, was also the only witness the defense called during the entire case. Dr. Thurman had interviewed Woodward on several occasions and administered several different psychological tests to Woodward. In his opinion, Woodward was able to distinguish between right and wrong at the time of the crime. However, the critical portion of Dr. Thurman's testimony was that Woodward did suffer from severe mental disturbance at the time of the crime, in the form of a major depressive disorder with psychotic features. At trial, Woodward's attorney allowed Dr. Thurman to testify only to the results of his testing and not to the detailed history brought out during the interviews with Woodward. This is stated in Dr. Thurman's affidavit and is apparent from the direct examination.
By not realizing that they could offer Dr. Thurman's testimony about the Woodward's mental illness without opening the door to unlimited character evidence, Woodward's trial counsel were ineffective. Having made a tactical decision to rely solely on mental illness as a mitigating factor, counsels' failure to offer all of the evidence they had was inexcusable. In conjunction with Jones' remarks on closing argument, this error becomes even more prejudicial. Failing to make the most of the available evidence in mitigation resulted in the death sentence according to the affidavits of the jurors submitted with Woodward's application. The ineffective counsel issue provides an independent reason for reversal of the death penalty and remand for a new trial on sentencing.

III. Whether Woodward's Confession Was Obtained in Violation of His Right Against Self-Incrimination, Because the Miranda Warnings Given to Him Placed the Burden of Obtaining Counsel on Him.
Woodward claims that the following statement on the waiver form he signed before giving a confession prejudiced him:

*811 "7. A Lawyer will also be provided for you now, if you wish, whom you may call from the list of lawyers furnished."
This statement followed these prior statements:
"4. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning,"
"5. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish," and
"6. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."
No reasonable person would believe Woodward's argument after reading this entire document. It clearly advises the defendant that he can refuse to answer questions without a lawyer present and that "one will be appointed for you before any questioning, if you wish."
Woodward did not raise this issue on direct appeal, and therefore the waiver provisions § 99-39-21(1) (Supp. 1993) of the PCR Act apply as discussed in issue I.

IV. Whether the Videotaped Confession Should Not Have Been Admitted Because of the State's Failure to Comply with the Agee Rule.
Woodward complains that the requirement of Agee v. State, 185 So.2d 671, 673 (Miss. 1966), that all of the officers present at the confession be called to show that it was made voluntarily, was not met.
Again, Woodward did not raise this issue on direct appeal, nor has he shown here that he can meet the definition of cause and actual prejudice in the Act as discussed above. Woodward does not suggest to this Court any type of prejudice which could have even possibly resulted from the failure to call all of the officers present. This issue is barred by the waiver provision of Miss. Code Ann. § 99-39-21 (Supp. 1993).

V. Whether the Especially Heinous, Atrocious or Cruel Jury Instruction Given to Woodward's Jury Requires a New Trial?

In his supplemental application filed November 20, 1990, Woodward argues that the especially heinous, atrocious or cruel jury instruction given in his case requires a new sentencing hearing under the U.S. Supreme Court's decisions in Clemons and Shell. This issue is procedurally viable, despite the fact that Woodward did not object to the instruction at trial or on direct appeal. Stringer v. Black, 503 U.S. ___, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992); Wilcher v. State, 635 So.2d 789 (Miss. 1993). See also, Wilcher v. Hargett, 978 F.2d 872 (5th Cir.1992); Wiley v. Puckett, 969 F.2d 86 (5th Cir.1992); Irving v. State, 618 So.2d 58 (Miss. 1992); Gilliard v. State, 614 So.2d 370 (Miss. 1992).
Woodward's sentencing jury did indeed receive an instruction on the same especially heinous, atrocious or cruel aggravating circumstance at issue in Clemons, with the same "definitional" instruction the United States Supreme Court found constitutionally insufficient in Shell. Woodward's instruction read:
The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means assigned [sic] to inflict a high degree of pain with indifference to or even enjoyment of the suffering of others.
This Court has, in Clemons and in all of the cases since Clemons, unequivocally stated that it did not have the authority to re-weigh aggravating[2] and mitigating circumstances *812 under Miss. Code Ann. § 99-19-101 (Supp. 1993), finding that only the jury could make that determination under Mississippi's statutory scheme. Clemons v. State, 593 So.2d 1004 (Miss. 1992). See also, Irving v. State, 618 So.2d 58 (Miss. 1992); Gilliard v. State, 614 So.2d 370 (Miss. 1992); Pinkney v. State, 602 So.2d 1177 (Miss. 1992); Jones v. State, 602 So.2d 1170 (Miss. 1992); Shell v. State, 595 So.2d 1323 (Miss. 1992). Further, as this Court held in Wilcher v. State, 635 So.2d 789 (Miss. 1993), this Court cannot either reweigh or apply harmless-error analysis to this issue as a matter of state statutory law.
In accordance with the foregoing precedent, this Court vacates the judgment of death against Woodward and remands to the Circuit Court of Perry County for a new sentencing hearing.
DEATH SENTENCE VACATED AND REMANDED TO THE CIRCUIT COURT OF PERRY COUNTY FOR A NEW SENTENCING HEARING.
HAWKINS, C.J., and SULLIVAN and BANKS, JJ., concur.
SMITH, J., concurs in part, dissents in part with separate written opinion joined by DAN M. LEE, P.J. and JAMES L. ROBERTS, Sr., J.
PITTMAN and McRAE, JJ., not participating.
SMITH, Justice, concurring in part, dissenting in part:
I concur in the affirmance of the guilt phase of Woodward's trial. Woodward fits into the category of "hopelessly guilty." Caldwell v. State, 481 So.2d 850 (Miss 1985), rev'd on other grounds, Caldwell v. Mississippi, 479 U.S. 1075, 107 S.Ct. 1269, 94 L.Ed.2d 130 (1987).
While I agree that Woodward should be granted a new trial on sentencing, I would do so based solely on a finding that he was not afforded effective assistance of counsel during the penalty phase of his capital murder trial. I dissent from the majority's opinion to the extent that it relies on any other basis for reversal.
Choosing to rely on a single witness or in limiting the focus of the mitigation to the issue of acting under extreme mental disturbance or illness was not ineffective per se. Indeed, the defense cannot be faulted for their trial strategy. The attorneys selected the only logical defense available. They chose to admit to simple murder, then appeal to the jury for leniency presenting mitigating circumstances showing mental illness. It was in the failure to thoroughly prepare or carry out their chosen strategy that counsel failed to provide effective assistance of counsel. Counsel did not confer with their only witness until minutes before he was to testify. They incorrectly instructed him and unnecessarily limited his testimony apparently based on a misunderstanding of evidentiary rules. They would not have opened the door to unlimited character evidence. They provided no character evidence to supplement this testimony. They simply did not do their homework.
When given the opportunity by the court to interview the State's rebuttal witness, Dr. Stanley, counsel chose not to, without justification or reason. This witness delivered damaging testimony which defense counsel was not prepared to counter.
When looking at the decisions made by counsel in the context of review of a claim of ineffective assistance of counsel, "a common thread of the fabric of the reviewing courts' deference to tactical considerations is thorough investigation." State v. Tokman, 564 So.2d 1339, 1343 (Miss. 1990) The decision not to interview witnesses, particularly your own, cannot be considered as an effective strategic choice.
*813 When counsel makes choices of which witnesses to use or not use, those choices must be made based on counsel's proper investigation. Counsel's minimum duty is to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case. Tokman, 564 So.2d at 1342; Ferguson v. State, 507 So.2d 94, 96 (Miss. 1987).
While there may be no constitutional mandate that any mitigating character evidence be presented during the sentencing phase of a capital murder case, this judgment call should be based on some real notion that this testimony will not have a positive effect. See Tokman, 564 So.2d at 1343. In Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985), this Court set out some possible reasons for not calling witnesses: "their testimony as a whole may be more harmful than helpful, their testimony may be cumulative, the witnesses may be unwilling or uncooperative; witnesses may be beyond the jurisdiction of the court or it may be beyond the financial ability of the defendant to provide for the witnesses' appearance." Present and available to testify at Woodward's trial, at a minimum, was the defendant's mother. There was no reason not to call her or other family members present at the trial. The failure to call any witness who could humanize the defendant cannot be justified as an effective strategy. As this Court said in Leatherwood, 473 So.2d at 970:
In view of the importance of mitigating evidence in the sentencing phase it is difficult to understand why favorable, willing witnesses who could be discovered by questioning the defendant would not be called. It if were within the financial ability of the defendant to arrange for the appearance of a representative group of them, this would have a strong bearing on whether trial counsel provided effective assistance.
Counsel's failure to prepare for and carry out the chosen defense and to provide any character evidence justifies this case being reversed and remanded for a new sentencing trial.
In looking at the jury instruction on heinous, atrocious or cruel aggravating circumstance, I have already expressed my view that this Court's decision not to apply harmless error analysis is not mandated by state statutory law and should be applied in appropriate cases. I cannot help but note that in the case sub judice defense counsel objected to any instruction which would assist the jury in understanding this aggravating circumstance. I adopt and reaffirm my argument found in dissent to Wilcher v. State, 635 So.2d 789 (Miss. 1993) and other cases subsequent thereto.
DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.
NOTES
[1] (1) The Defendant has no significant history of prior criminal activity.

(2) The offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance.
(3) The victim was a participant in the Defendant's conduct or consented to the act.
(4) The Defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor.
(5) That the Defendant acted under extreme duress or under the substantial domination of another person.
(6) The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as substantially impaired.
(7) The age of the Defendant at the time of his crime.
(8) Any other matter, any other aspect of the Defendant's character or record, and any other circumstance of the offense brought before you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the Defendant.
See Miss. Code Ann. § 99-19-101(6) (Supp. 1993).
[2] Under Miss. Code Ann. § 99-19-101(5) (Supp. 1993) the trial court submitted three aggravating factors to the jury for its consideration:

(1) That the Capital Murder of Rhonda Crane was committed while Paul Woodward was engaged in the commission of rape.
(2) That the Capital Murder of Rhonda Crane was especially heinous, atrocious or cruel.
(3) That the capital offense was committed for the purpose of avoiding or preventing a lawful arrest, or effecting an escape from custody.
This section, 99-19-101(5)(d), provides the submission of "[t]he capital offense was committed while the defendant was engaged,  in commission of  a rape ...," and Subsection (5)(e) permits "the capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." The third aggravation factor was declared unconstitutionally vague in Clemons. This Court reiterates its holding that the reweighing of these factors is for a jury under our statute.