# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 01-60701
Summary Calendar

―――――――――

RONNIE CONNER,

Petitioner-Appellant,

VERSUS

CHRISTOPHER B. EPPS,
ACTING COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS;
MICHAEL MOORE,
ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI,

Respondents-Appellees.

―――――――――――――――

Appeal from the United States District Court
for the Southern District of Mississippi
m 4:97-CV-17WS

―――――――――――――――

November 18, 2002

Before SMITH, EMILIO M. GARZA, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

This case presents the sole question whether Ronnie Conner received ineffective assistance of counsel during the sentencing phase of his trial for capital murder. Because any deficiency in counsel's performance did not prejudice Conner under *Strickland v. Washington*, 466 U.S. 668 (1985), we affirm.

I.

The Mississippi Supreme Court stated the facts of this case in detail on Conner's direct appeal. *Conner v. State*, 632 So. 2d 1239, 1243-47 (Miss. 1993). We review these facts briefly here.

At the time of the murder, Conner, a man of modest intelligence and less worldly success, was thirty-one years old. He had an IQ in the mid- to low seventies and had never held a steady job. He drank often and used marihuana and crack cocaine. He was diagnosed in the 1980's with schizophrenia and unspecified personality disorders.

On January 1, 1990, Conner declared that "I am out to get my revenge because I am tired of sitting around and waiting on people to give me mine, so I am going to start getting mine." He apparently decided to "get his" by kidnaping and brutally murdering Celeste Brown, an elderly woman. When Brown arrived by car at a train station, Conner abducted her at knife point, making her drive her car to a secluded country road a few miles from the station, where he slit her throat. The wound was not deep enough to cause instant death, so Brown bled for up to ten minutes until she finally died. The wound cut her jugular vein and punctured her oral cavity, leaving her unable to call for help after Conner had left her for dead. As a result of these crimes, Conner took approximately $200 and a ring from Brown, which he later sold for $15. He then used this money in part to buy beer and crack.

A jury convicted Conner of capital murder based on overwhelming testimony and evidence. A friend of Conner's witnessed him abduct Brown shortly after Conner said he needed to rob someone to get some cash; forensic evidence connected him to the murder. Conner also displayed Brown's ring to several acquaintances to obtain their estimates of the its value. Finally, he confessed, in the presence of three other people, to murdering Brown. He relied on an alibi defense based on testimony that, on cross-examination, proved to be either not credible or not inconsistent with the state's evidence.

At the sentencing phase of the trial, the state re-introduced all evidence from the guilt phase and a record of Conner's conviction of robbery. The state presented no additional witnesses. Conner's trial counsel also relied on the guilt-phase evidence, which included Conner's medical records, and presented two additional witnesses.

First, Conner's sister Dorothy testified that Conner had been treated for mental illness at the Weems Mental Health Center for roughly a decade and that he was on medication, though she thought he did not always take his medicine. She also testified to Conner's gen-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

eral history of social maladjustment. On cross-examination, she acknowledged that Conner was responsible for his actions and that he knew right from wrong on the day of the murder.

Second, Conner testified to his history of schizophrenia and its effects on him. He acknowledged that he took his medication every day, including the day of the murder. And though Conner admitted that he sometimes drank while taking the medication, against his doctor's orders, he denied either drinking or smoking crack on the day in question. Perhaps recognizing how damaging these admissions were to his mitigating-circumstances argument, Conner quickly backpedaled and claimed he could not remember whether he took his medication, drank, or smoked crack that day.

To sentence to death, under Mississippi law, the jury must find specific aggravating circumstances unanimously and beyond a reasonable doubt. MISS. CODE ANN. § 99-19-103. The jury identified five aggravating circumstances: Conner committed the murder (1) while engaged in a kidnaping, (2) while engaged in a robbery, (3) for pecuniary gain, and (4) in an especially heinous, atrocious, or cruel manner, and (5) he had a felony conviction involving the use or threat of violence. MISS. CODE ANN. § 99-19-101(5).[1] The jury

further found insufficient mitigating circumstances to outweigh these aggravating circumstances. The jury did not state whether it found any mitigating circumstances or, if it did, which ones, because Mississippi law does not require the jury to agree on particular mitigating circumstances or to find them beyond a reasonable doubt.[2] *Bell v. State*, 725 So. 2d 836, 859 (Miss. 1998); *Conner*, 632 So. 2d at 1277.

After the Mississippi Supreme Court affirmed Conner's capital conviction and sen-

---

[1] On direct appeal and state collateral review, Conner argued that the jury impermissibly double-counted the underlying offense of robbery and the motive, i.e., pecuniary gain, for the underlying offense. On both occasions, the Mississippi Supreme Court acknowledged that it had disapproved of this practice, after Conner's trial, in *Willie v. State*, 585 So. 2d 660 (Miss. 1991), but held that *Willie* was not retroactive. *Conner*, 632 So. 2d at 1269 (direct appeal); *Conner v. State*, 684 So. 2d 608, (continued...)

[1](...continued)
614 (Miss. 1996) (state collateral review). Conner makes this same argument in his petition for a writ of habeas corpus. *See infra* part III.

Also on direct appeal, Conner argued that the jury instruction on the aggravating circumstance of committing the crime in an "especially heinous, atrocious, or cruel manner" was impermissibly vague under the Eighth Amendment. The Mississippi Supreme Court acknowledged that one sentence of this instruction was impermissibly vague, but held that the other two sentences satisfied *Clemons v. Mississippi*, 494 U.S. 738 (1990), and *Shell v. Mississippi*, 498 U.S. 1 (1990). *Conner*, 632 So. 2d at 1269-71. Conner also makes this argument in his habeas petition. *See infra* part III.

[2] The instruction allowed the jury to consider four statutory mitigating circumstances: (1) the possibility that Conner committed the murder under the influence of extreme mental or emotional disturbance, (2) the possibility that Conner's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, (3) Conners's age at the time of the murder, and (4) whether he had no significant history of prior criminal activity. MISS. CODE ANN. § 99-19-103(6). The instruction also allowed the jury to consider any additional non-statutory mitigating circumstance.

tence on direct appeal, Conner filed a "Motion to Vacate Conviction and/or Death Sentence" under the Mississippi Uniform Post-Conviction Collateral Relief Act. MISS. CODE ANN. § 99-39-1 *et seq.* This motion stated, as a ground for relief, the same question presented by Conner's federal habeas corpus petition, namely, whether Conner received ineffective assistance of counsel during the sentencing phase of his trial because his counsel had failed to investigate and present allegedly mitigating evidence related to Conner's schizophrenia. The Mississippi Supreme Court identified *Washington* as the controlling law and held that Conner had suffered no prejudice from his counsel's failure to offer the evidence. *Conner v. State*, 684 So. 2d 608, 610-12 (Miss. 1996). The court denied the petition.

Conner next filed a federal habeas petition that identified eight separate grounds for relief. In an unpublished opinion, the court rejected all grounds and denied the petition, then rejected two motions to reconsider. The court nevertheless granted a certificate of appealability ("COA"), 28 U.S.C. § 2253, limited to the question of ineffective assistance of counsel at the sentencing phase.

## II.
### A.

Conner's argument is straightforward: He contends that his trial counsel was ineffective by failing to investigate and therefore to present allegedly mitigating evidence related to Conner's history of schizophrenia. "It is clear that defense counsel's failure to investigate the basis of his client's mitigation defense can amount to ineffective assistance of counsel." *Lockett v. Anderson*, 230 F.3d 695, 711 (5th Cir. 2000). Conner argues that if his counsel had prepared properly for the sentencing phase, the attorney would have called several

doctors and social workers who could have testified about Conner's history of schizophrenia and his supposed tendency not to take his medication. Furthermore, Conner urges that the failure to present this testimony prejudiced him, because there is a reasonable probability that the jury would have found him under the influence of extreme mental disturbance or unable to appreciate the criminality of his conduct or to conform his conduct to law.

Thus, according to Conner, there is a reasonable probability that the jury would have sentenced him to life imprisonment instead of death had it known of this evidence. Finally, Conner argues that the Mississippi Supreme Court's decision to the contrary is both an unreasonable application of *Washington* and the result of an unreasonable determination of the facts in light of the evidence before that court. 28 U.S.C. § 2254(d)(1)-(2).

In *Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) (en banc), we reviewed a similar ineffective assistance claim of failure to investigate and present allegedly mitigating evidence. The thorough reasoning of *Neal* guides our analysis here. "In a habeas corpus appeal, we review the district court's findings of facts for clear error and review its conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court." *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002) (citation omitted).

### B.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this appeal, because Conner filed his petition after April 24, 1996, the effective date of AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 324-26

(1997). In particular, the provisions of 28 U.S.C. § 2254(d) apply to Conner's arguments that the Mississippi Supreme Court unreasonably applied federal law and unreasonably determined the facts.

Section 2254(d) governs any petition for writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State Court proceedings." A case is decided "on the merits" where the state court's disposition is substantive, not procedural. *Neal*, 286 F.3d at 235 (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)). The Mississippi Supreme Court expressly held that "Conner fail[ed] to show that but for the presentation of evidence of his alleged mental illness, the outcome of his trial might have been different." *Conner*, 684 So. 2d at 612. This holding certainly qualifies as a decision "on the merits."

Section 2254(d)(1) states that a federal court shall not grant a writ of habeas corpus unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[3] The two phrases in § 2254(d)(1)SS"contrary to" and "unreasonable application"SShave independent meanings, and the "unreasonable application" standard applies when "the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The unreasonable application standard applies in this case because, as the parties rightly agree,

*Washington* imposes the correct governing legal principle.

We observed in *Neal*, 286 F.3d at 236, that "'unreasonable' is difficult to define," but fortunately the Court offered some guidance in *Williams*. First, the Court rejected a subjective standard of reasonableness like the one we adopted in *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), and announced instead an objective standard. "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

Second, and more importantly, the Court distinguished between a merely *incorrect* or *erroneous* application of federal law and an *unreasonable* application. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.[4]

---

[3] *Washington* is "clearly established Federal law." *Williams*, 529 U.S. at 390-91.

---

[4] In *Woodford v. Visciotti*, 537 U.S. ___, 2002 U.S. LEXIS 8312 (U.S. Nov. 4, 2002) (per curiam), the Court addressed a similar claim of ineffective assistance of counsel during the sentencing phase of a capital murder trial. The Ninth Circuit had granted the petitioner a writ of habeas corpus, holding that the state court had not considered the totality of the mitigating evidence or the prejudicial effect of counsel's actions and the weakness of the aggravating factors. *Id.* at *3-*4. The Supreme Court reversed, because "[t]he Ninth Circuit did not observe this distinction [between an incorrect and an unreasonable application], but ultimately substituted its own judgment for that of the state
(continued...)

5

In *Neal*, we further addressed the scope of the "unreasonable application" standard. First, we, unlike several other circuits, specifically declined "to supplement the *Williams* Court's 'objectively unreasonable' standard. *Neal*, 286 F.3d at 246 n.11. Second, we held that a federal habeas court should review only the state court's legal conclusion, not its reasoning or method of reaching that conclusion. The "focus . . . should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Id.* at 246.

Section 2254(d)(2) states that a federal court shall not grant a writ of habeas corpus unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The Supreme Court has not interpreted this new provision; we, however, have addressed § 2254(d)(2). "To establish that habeas relief is warranted on the § 2254(d)(2) ground . . . a petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a state court's factual findings are correct." *Foster*, 293 F.3d at 776-77 (citing *Dowthitt v. Johnson*, 230 F.3d 733, 744 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001)).

With the deferential standards of § 2254(d) in mind, we face a precise question. We em-

phatically do not review the Mississippi trial record to determine *de novo* whether Conner received ineffective assistance of counsel during the sentencing phase of his trial. Rather "the question before us is whether the Mississippi Supreme Court's decision to reject [Conner's] ineffective assistance claim 'involved an unreasonable application' (and not merely an incorrect application) of [*Washington*]." *Neal*, 286 F.3d at 236.

C.

To establish ineffective assistance of counsel, Conner must show that (1) his trial counsel's performance was deficient and (2) this deficient performance prejudiced his defense. *Washington*, 466 U.S. at 687. The Mississippi Supreme Court assumed that the trial counsel's performance was deficient but held that the deficiency did not prejudice Conner. *Conner*, 684 So. 2d at 612. This determination is neither an unreasonable application of *Washington* nor the result of an unreasonable determination of the facts presented in the state court proceeding.

1.

A lawyer's performance is deficient if it "falls below an objective standard of reasonableness" as measured by professional norms. *Washington*, 466 U.S. at 688. In applying this standard for deficiency, "[w]e must determine whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances." *Neal*, 286 F.3d at 236. We must be wary of "the distorting effects of hindsight," *Washington*, 466 U.S. at 689, and we do not assume that counsel's performance was deficient "merely because we disagree with trial counsel's strategy," *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

---

[4](...continued)
court, in contravention of 28 U.S.C. § 2254(d)." *Id.* at *9. The Court concluded that "[w]hether or not we would reach the same conclusion as the California Supreme Court, we think at the very least that the state court's contrary assessment was not 'unreasonable.'" *Id.* at *13 (citation omitted).

At the same time, a criminal defendant facing the death penalty is entitled to a "reasonably substantial, independent investigation" into potential mitigating circumstances. *Baldwin*, 704 F.2d 1325, 1332-33 (5th Cir. 1983). We consider several factors when evaluating the adequacy of trial counsel's investigation: (1) what trial counsel actually did to prepare for sentencing, (2) what mitigating evidence he obtained, (3) what additional "leads" he had, and (4) what results he might have expected from these leads. *Neal*, 286 F.3d at 237. Conner's trial counsel did not satisfy this standard.[5]

Trial counsel admitted that his performance was deficient. In an affidavit supporting Conner's state petition for collateral relief and federal habeas petition, counsel states that he was (and still is) convinced of Conner's innocence. Though he "recognized that should Mr. Conner be found guilty, his best argument at sentencing was that he suffer[ed] from mental illness," counsel did not prepare for the sentencing phase before trial. He did not consult with any of Conner's treating physicians at Weems Mental Health Center or any expert witness on schizophrenia.

After the jury returned a verdict of guilty, counsel frantically tried to locate a treating physician or an expert witness. Yet, with the sentencing phase beginning the next day, he could locate neither. Thus, he relied on Conner's medical records and the testimony of Conner's sister Dorothy, much of which was excluded as hearsay.

We by no means suggest that a trial counsel's sworn acknowledgment of his deficient performance satisfies *Washington*'s deficiency standard. Such a rule, it should go without saying, would invite every defendant to attack his conviction based on an easily attainable affidavit from a now-removed and probably conscience-stricken attorney. In this case, however, the state trial record supports the attorney's affidavit.

Conner contends that his lawyer should have presented additional evidence of Conner's schizophrenia and his failure to take medication. The attorney did present these facts to the jury, albeit in skeletal form. Conner's medical records documented his history of schizophrenia and his prescriptions for medication to control the disease. His sister testified that he was treated at Weems Medical Health Center and that he was on medication. She told the jury that she thought Conner did not always take his medication. Conner testified about his mental illness and its effects. Thus, the jury was aware of his main argument for mitigation, though "it was presented to the jury in an abbreviated form with no elaboration." *Neal*, 286 F.3d at 238.

Based on several affidavits, Conner argues that counsel could have offered much stronger evidence.[6] This evidence is threefold. First is an affidavit from W.M. Wood, the psychiatrist who treated Conner at Weems in 1988 and 1989. Wood attests that, if the attorney had so requested, he could have testified regarding Conner's history of schizophrenia and alcohol abuse; Conner's history of psychotic episodes, including hearing voices; Conner's leap from a

---

[5] Although the Mississippi Supreme Court assumed trial counsel's performance was deficient, the state does not concede the point. We therefore address the state's arguments.

[6] Conner presented these affidavits to the Mississippi Supreme Court and the federal district court.

moving train at these voices' instructions; Conner's medical prescriptions and the doctor's belief that Conner did not always take the medication; the doctor's belief that Conner was using alcohol and drugs in the latter part of 1989; and his opinion that Conner's "acting out without regard to laws and morays [sic] is a product of his mental illness rather than behavior under which he has control."

Second is a series of affidavits and prescriptions allegedly suggesting that Conner was not taking his medication on the day of the murder. As noted, Wood would have testified that he "believed" Conner was off his medication. Similarly, Marie Sipp, a social worker who handled Conner's case at Weems, attests that she would have testified that she "believe[d] . . . he had gotten off his medication."

Marshall Powe, a social worker who assisted Conner at Weems from 1987 to 1989, contends that he would have testified regarding the Conner family history of mental illness, Conner's inability to manage his finances, and his frequent confusion. Ida Conner, Conner's mother, attests that she found prescriptions for medication in Conner's apartment shortly after his arrest. Perry Wallace, a doctor who treated Conner at a local hospital, stated that he wrote these prescriptions for Conner in December 1989. Conner offers these last two affidavits presumably as the foundation to introduce the prescriptions and argue that they prove he was not taking his medication on the day of the murder.

Third, Conner offers the affidavit of Mark Webb, a psychiatrist. Though Webb never treated, examined, or even met Conner, he opines based on the preceding affidavits, Con-

ner's medical records, and the state court record that Conner "very likely" was not taking his medication on the day in question.

More importantly, Webb expresses his "opinion to a reasonable degree of medical certainty" that Conner murdered Brown under the influence of extreme mental and emotional disturbance and that Conner's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. This language mimics the two statutory mitigating circumstances on which Conner relies. MISS. CODE ANN. § 99-19-101(6)(b), (f). Conner also suggests that Webb could have served as a general medical expert on the origins and symptoms of schizophrenia.

As we explain, *infra* part III.C.2, we are unimpressed by this evidence. Unlike the evidence discussed in *Neal*, 286 F.3d at 237-39, this evidence is neither extensive nor weighty. The state argues, for this reason, that counsel's failure to present the evidence could not amount to deficient performance. We disagree.

The factors identified in *Neal* do not support the state's argument. Counsel did nothing whatsoever to prepare for the sentencing phase before trial began or during the guilt phase. Yet, he was well aware of Conner's medical history, and he rightly believed that Conner lacked any other persuasive mitigating evidence. The attorney did not follow this obvious "lead," even though any reasonable person, much less any reasonable attorney, would have known to consult with Conner's treating physician and a medical expert.

Moreover, this evidence was readily

8

available. These potential witnesses lived in the same county as Conner and trial counsel, i.e., the county where the state tried Conner. Several of these potential witnesses attest that trial counsel did not contact them before or during Conner's trial, a fact we found "most troubling" in *Neal*, 286 F.3d at 240. Finally, the state does not argue, nor does the record indicate, that counsel strategically withheld this evidence to avoid the introduction of unflattering evidence along with the mitigating evidence.

Conner's lawyer had an obligation at least to investigate and perhaps to present this potentially mitigating evidence, because it "could reasonably have been expected to augment [Conner's] case." *Id.* His failure to do so "falls below an objective standard of reasonableness" as measured by professional norms. *Washington*, 466 U.S. at 688. Thus, we agree with the Mississippi Supreme Court's implicit assumption: Counsel's performance was deficient.

2.

Deficiency is not enough; Conner must show prejudice, which is at least "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Washington*, 466 U.S. at 694. A "reasonable probability" means a probability sufficient to undermine confidence in the outcome. *Id.* at 668. "In determining prejudice, we are thus required to compare the evidence actually presented at sentencing with all the mitigating evidence contained in the postconviction record." *Neal*, 286 F.3d at 241. The additional mitigating evidence must be so compelling that there is a reasonable

probability that at least one juror[7] reasonably could have determined that Conner did not deserve the death penalty because of his reduced moral culpability. *Id.*

We do not, however, write on a blank slate, because the Mississippi Supreme Court already has adjudicated this claim on the merits. *Conner*, 684 So. 2d at 610-12. We therefore must affirm the denial of the habeas petition unless the Mississippi Supreme Court unreasonably applied *Washington* or unreasonably determined the facts based on the record. 28 U.S.C. § 2254(d)(1)-(2). So far from being unreasonable, we conclude that the Mississippi Supreme Court's adjudication was imminently reasonable on the law and the facts.

That court observed that at several junctures of the trial, the state trial court carefully considered Conner's mental health. *Conner*, 684 So. 2d at 611. The court also noted that psychiatrists at the Whitfield State Hospital had evaluated Conner in March 1990 and concluded that

> [t]he staff was unanimous in the opinion that he is competent to stand trial at the present time. He appears to have a rational as well as factual understanding of the charges against him and he appears capable of assisting his attorney in preparing a defense. With regard to his sanity at the time of the crime, the staff was unanimous in the opinion that he knew the difference between right and wrong in relation to his actions.

---

[7] Under Mississippi law, the jury must vote unanimously to impose the death penalty. MISS. CODE ANN. § 99-19-103.

9

Mr. Conner has been treated at the [Weems] Mental Health Center for a number of years and has a Schizophrenic diagnosis. We have retained this diagnosis, although he has shown few if any of the symptoms of this disorder during his stay in the hospital. He is on medication and this could account for the lack of symptoms. We have given him a diagnosis of Personality Disorder Not Otherwise Specified to reflect a long-standing pattern of social discomfort, excessive dependency, and a tendency to take out his anger in indirect and passive ways.

*Id.* at 611 (citation omitted).[8] Next, the court carefully distinguished two *Washington* precedents. *Id.* at 611-12 (distinguishing *Woodward v. State*, 635 So. 2d 805 (Miss. 1993), and *Loyd v. Smith*, 899 F.2d 1416 (5th Cir. 1990)). The court then stated that "[b]ased on the evaluation from Whitfield, it hardly seems that further evidence of Conner's alleged personality disorders was necessary." *Id.* at 612.

Finally, the Mississippi Supreme Court reached the heart of its analysis, namely, that the additional mitigating evidence is not especially probative of the mitigating circumstances on which Conner relied. Conner asserted that the evidence showed that he murdered under the influence of extreme mental disturbance and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. In particular, he claimed he suffered from schizophrenic delusions on the day of the murder because he

was not taking his medication.

The additional evidence, however, established merely that Conner once was diagnosed with schizophrenia, may (or may not) have failed to take his medication regularly, and had a history of substance abuse. *Id.* The court acknowledged that "it might be tempting to argue that Conner was prejudiced by his attorney's lack of foresight," but the court faithfully applied the *Washington* standard and held that "Conner fails to show that but for the presentation of evidence of his alleged mental illness, the outcome of his trial might have been different." *Id.*

We agree with the Mississippi Supreme Court that there is no reasonable probability that even a single juror would have refused to impose the death penalty if presented with the additional mitigating evidence. Conner does not argue that the jury would have found a general mitigating circumstance such as a troubled childhood, a hard life, or unadorned mercy. Conner argues that the evidence would have convinced the jury that on the day of the murder, he was under the influence of extreme mental disturbance and lacked the capacity to understand the criminality of his conduct or to conform his conduct to law, because he suffered from schizophrenic delusions as a result of not taking his medication. The additional mitigating evidence does little to establish this proposition.

None of the proffered witnesses encountered Conner on the day of the murder, so they have no firsthand, personal knowledge of whether he was taking his medication. Wood would have testified only that he "believed" Conner did not take his medication in "intervals" and that Conner generally "act[ed] out without regard to laws" because

---

[8] The full text of the Whitfield letter appears at *Conner*, 632 So. 2d at 1251.

of Conner's "mental illness." This testimony, however, would not have established specifically that Conner's misdeeds were the result of schizophrenic delusions. Similarly, the affidavits of Sipp and Powe state nothing more than their belief, based to some extent on sheer speculation, that Conner was not taking his medication.

The prescriptions offered as evidence, based on the affidavits of Ida Conner and Wallace, also do not prove that Conner was not taking his medications. Conner has presented no evidence that these prescriptions were unfilled or, even if they were unfilled, that he did not have medication remaining from earlier prescriptions. Finally, Webb might have explained, in more precise detail, the nature of schizophrenia to the jury, but this testimony certainly could not establish that Conner was not taking his medicine on the day of the murder.

Vastly more probative than any of this evidence is Conner's testimony during the sentencing phase. He admittedSSon direct examination, no lessSSthat he took his medication every day. On cross-examination, he further acknowledged that he specifically recalled taking it on the murder date, and denied drinking alcohol or smoking crack that day.

Granted, Conner instantly retreated and claimed he could not recall whether he took his medication, drank, or smoked crack. Perhaps these admissions reveal a man still suffering schizophrenic delusions (though we note that he was taking his medication during the trial). Perhaps Conner recognized that he had terribly undermined his only plausible mitigating circumstance. We cannot say, because we did not observe his testimony, which is why this kind of credibility determination belongs particularly with the jury. We will not revisit such a jury finding on direct appeal from a federal district court, and we certainly will not do so on a habeas petition from state court.

Even if the jury had credited this additional evidence, the Mississippi Supreme Court is correct that, as we said in *Neal*, 286 F.3d at 247, "the additional evidence was not substantial enough to outweigh the overwhelming aggravating circumstances." Conner manifested a shocking indifference to human life with his gruesome murder of a helpless old woman for barely more than $200. The jury expressed its reasoned and justifiable moral outrage by finding four aggravating circumstances for imposing the death penalty.[9]

The jury had the basic facts of Conner's mitigating circumstances argument before it, i.e., Conner was diagnosed with schizophrenia and may not have taken his medication regularly, but it nonetheless voted unanimously that the aggravating circumstances outweighed the mitigating circumstances (if any). Mere hearsay and conjecture from a handful of doctors and social workers is unlikely, in the extreme, to have shifted the balance.

This case is a far cry from other cases in which we have held that a capital defendant was prejudiced by counsel's failure to present additional mitigating evidence. In *Neal*, for example, the attorney presented the "basic evidence" of the defendant's miserable childhood,

---

[9] The jury actually found five aggravating circumstances, but the Mississippi Supreme Court has explained that two of them should count as only one. *See supra* note 1.

moderate retardation, history of institutionalization, and serious behavioral problems. *Id.* at 243. Yet, we held that the state court had erred in concluding that the failure to present the additional evidence did not prejudice the defendant, because the additional evidence provided much more detail and context, buttressed other evidence, and humanized the defendant, *id.* at 244, though we further held that the state court had not acted unreasonably under § 2254(d)(1) and *Williams*, *id.* at 246-47. By contrast, the additional mitigating evidence in this case provides no extra details, but simply attempts to buttress other evidence with unsubstantiated speculation.

In *Lockett*, for another example, trial counsel offered essentially no mitigating evidence during the sentencing phase but instead simply begged the jury for mercy. *Lockett*, 230 F.3d at 711, 716. Yet, counsel knew of evidence that the defendant suffered from a personality disorder, a brain abnormality, and seizures caused by temporal lobe epilepsy, which could have caused the violent murder. *Id.* at 713. We had little trouble concluding that the failure to present this evidence prejudiced the defendant, because an objectively reasonable jury, if presented with this evidence, very well might have concluded that the defendant had reduced moral culpability and therefore did not warrant the death penalty. *Id.* at 716-17. Unlike the evidence in *Lockett*, however, the additional mitigating evidence in this case does not introduce an entirely new aggravating circumstance and does not supplement an otherwise barren record.

On the record and with the arguments before us, we cannot say that the Mississippi Supreme Court incorrectly applied *Washington*, much less unreasonably applied it, or based its decision on an incorrect, much less an unreasonable, determination of the facts on the record before it. There is no reasonable probability sufficient to undermine confidence in the sentence of death.

III.

Conner seeks habeas relief on four additional grounds: (1) The jury double-counted, as aggravating factors, the underlying felony of robbery and the motive, i.e., pecuniary gain, for this underlying felony; (2) the Mississippi Supreme Court refused to grant Conner expert assistance; (3) the district court, after denying the petition on the merits, refused to let Conner amend his petition to include grounds for relief based on *Penry v. Johnson*, 532 U.S. 782 (2001), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (4) the jury instruction for the aggravating circumstance of an "especially heinous, atrocious, or cruel" offense was unconstitutionally vague. We do not address the merits of these grounds, because they are not properly before this court.

In an effort to reduce frivolous appeals and protracted death penalty litigation, AEDPA requires a habeas litigant to obtain a COA to appeal the denial of his petition. 28 U.S.C. § 2253. Section 2253(c)(3) plainly states that a COA "shall indicate which specific issue or issues satisfy the showing" necessary to obtain a COA. Conner did not request a COA from the district court, but instead filed a notice of appeal in which he identified the ineffective assistance claim and these other four grounds for relief. The court treated this notice of appeal as a constructive request for a COA on all grounds. Yet, the court granted a COA only on the ineffective assistance ground.

We cannot review questions beyond the

12

scope of the COA. 28 U.S.C. § 2253(c)(3); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997). Furthermore, "a notice of appeal is not a constructive request [to this court] for review of issues refused certification by the district court where the district court certified some but not all issues." *United States v. Kimler*, 150 F.3d 429, 430 (5th Cir. 1998). Conner did not specifically request that this court grant a COA on the additional four grounds.[10] Thus, we decline to consider whether he has made the necessary showing for a COA on these grounds, 28 U.S.C. § 2253(c)(2), or whether relief is warranted on the merits.[11]

The judgment of the district court, denying the petition for writ of habeas corpus, is AFFIRMED.

---

[10] Briefly and without argument, Conner requests a COA in his reply brief only after the state correctly argued, in its response brief, that these grounds are not properly before this court. We decline to recognize the request, however, because Conner should have made it in his opening brief. "It is well-settled that, generally, we will not consider issues raised for the first time in a reply brief." *United States v. Jackson*, 50 F.3d 1335, 1340 n.7 (5th Cir. 1995).

[11] Our refusal to reach these grounds operates as a dismissal with prejudice; we will not consider a second or successive habeas petition based on these grounds. 28 U.S.C. § 2244(b)(1).