IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 7, 2008

Charles R. Fulbruge III
Clerk

No. 06-70053

PAUL EVERETTE WOODWARD,

Petitioner-Appellant,

v.

CHRISTOPHER B. EPPS, Commissioner, Mississippi Department of
Corrections,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
(03-CV-529)

Before BARKSDALE, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

Paul E. Woodward has appealed the district court's denial of his 28 U.S.C.
§ 2254 petition for habeas corpus as to his conviction for capital murder and
sentence of death. Before the district court, Woodward requested the issuance
of a Certificate of Appealability ("COA") on four grounds raised in his petition.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

The district court, however, granted a COA on only three of these grounds.[1] Woodward subsequently filed a motion requesting this court to issue a supplemental COA as to the fourth issue: whether, at Woodward's 1995 re-sentencing, the prosecution's use of its peremptory challenges violated his Fourteenth Amendment right to equal protection under Batson v. Kentucky, 476 U.S. 79 (1986).

To obtain a COA, Woodward must make a substantial showing of the denial of a constitutional right. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). When, as here, the district court dismisses a petition on the merits, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Miller-El, 537 U.S. at 327. In death penalty cases, we resolve in the petitioner's favor any doubt about whether a COA should issue. Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005).

Woodward was convicted of capital murder with an underlying crime of rape, kidnaping, and oral sexual battery, and was originally sentenced to death in 1987. His conviction and sentence were affirmed on direct appeal, Woodward v. State, 533 So. 2d 418 (Miss. 1988), but in 1993, based on Woodward's petition for post-conviction relief, the Mississippi Supreme Court vacated the sentence of death and remanded the case for a new sentencing hearing. Woodward v. State, 635 So. 2d 805 (Miss. 1993). Upon remand, on September 20, 1995, he

---

[1] These three issues are: (1) Whether defense counsel's admission of Woodward's guilt in his closing argument during the guilt/innocence phase of Woodward's trial constitutes ineffective assistance of counsel; (2) Was Woodward's right to due process violated when, during Woodward's 1995 re-sentencing, the court refused to order an independent psychiatric evaluation; and (3) Whether defense counsel's failure to object to the State's introduction of "bad acts" evidence during the 1995 re-sentencing constituted ineffective assistance of counsel.

was again sentenced to death by a jury. The sentence was again affirmed on direct appeal, Woodward v. State, 726 So. 2d 524 (Miss. 1998), and the Mississippi Supreme Court denied post-conviction relief on April 6, 2003. See Woodward v. State, 843 So. 2d 1 (Miss. 2003).

Woodward's second sentencing proceeding forms the basis for his Batson claim. During jury selection, the State peremptorily challenged six jurors, including three black members of the venire panel. At this point, Woodward raised a claim under Batson. The court then requested that the State offer reasons for striking the three black jurors, numbers 7, 12, and 22, which the State did.[2] After a discussion of these strikes, the trial court found that the strikes were not racially motivated, and denied Woodward's objections. Woodward then offered his strikes, and during the next series of strikes the State struck four additional jurors. Among these jurors was one black juror, Juror 56, and Woodward objected.[3] The trial court denied the objection and struck Juror 56 from the panel. Two more series of strikes followed, and the State struck black Juror 67.[4] The trial court ruled that the strike was not made for a racially motivated reason, and struck Juror 67 from the panel. The court then moved on to the selection of the alternates. Woodward struck the first alternate, and the State then struck the next alternate, Juror 72, who was

---

[2] With respect to Juror 7, the State gave as its reason that "she is unemployed and on a previous case was unable to reach a verdict." With respect to Juror 12, the State indicated that she was unresponsive, hostile to the State during voir dire, and had a relative working in the prison system. Finally, with respect to Juror 22, the State explained that it had previously moved to dismiss her for cause because of Juror 22's unresponsive answers, but that the court had denied the request, so the State was exercising a peremptory challenge on that basis.

[3] The reason given by the State for the strike was that she was related to another juror on the panel and that "her husband has had law enforcement problems at a trailer park."

[4] The State offered as an explanation the fact that she was a psychology major and that it didn't have a written response from her.

black.[5]  The defense then stated: "For the record, we want to note that [Juror 72] is black.  They have now struck every black juror."

In total, the State exercised eleven peremptory challenges to the jury pool, five of which were for black jurors.  The State also exercised one strike for each of the two alternate juror positions; one of the potential alternates challenged by the State was black.  As a result of these challenges every black person was removed from the jury panel, and the jury that was eventually empaneled was composed entirely of white members.

In Batson, the Court delineated a three-step analysis for evaluation of a defendant's claim that a prosecutor used a peremptory strike in a racially discriminatory manner: (1) a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race; (2) the burden then shifts to the prosecutor to articulate a race-neutral reason for striking the juror in question; and (3) the trial court must determine whether the defendant carried his burden of proving purposeful discrimination.  See Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (citing Batson, 476 U.S. at 96-98).  The ultimate burden of persuasion lies at all times with the defendant.  See Purkett v. Elem, 514 U.S. 765, 768 (1995).

Woodward contends that the State's use of the challenges to strike every available black juror and to seat an all-white jury constitutes a violation of his rights under Batson.  He argues that the trial court erred by considering each strike "in a vacuum" and failing to examine the strikes in light of all relevant circumstances.  He contends that the fact that the State utilized its strikes to strike every black juror from the panel indicates that its reasons were pretextual.

---

[5] The State said that its strike was based on his response to a question about rape, as well as the fact that his brother-in-law is a convicted felon.

After reviewing each strike and concluding that the State had offered a race-neutral reason that Woodward failed to show was pretextual, both the Mississippi Supreme Court and the district court denied relief. However, neither the district court nor the Mississippi Supreme Court appears to have considered Woodward's claim that the totality of the circumstances, i.e., the strike of every black juror, provides support for his claim that the strikes were pretextual. In Miller-EI, the Supreme Court found that the defendant should have been granted a COA on his Batson claim where "[t]he prosecutors used peremptory strikes to exclude 91% of the eligible African-American venire members" and all relevant circumstances raised an inference of purposeful discrimination. 537 U.S. at 342; see also Snyder v. Louisiana, 128 S. Ct. 1203, 1208 (2008) ("[I]n considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted."). Here, Woodward has provided evidence that the prosecution struck 100% of the eligible black jurors using its peremptory challenges. While it is unclear at this juncture whether Woodward has demonstrated that "all relevant circumstances" raise an inference of purposeful discrimination, we conclude that, given the State's strike of every potential black juror, and the district court's apparent failure to consider Woodward's "totality of the circumstances" argument, this issue is "adequate to deserve encouragement to proceed further." Miller-EI, 537 U.S. at 327.

Accordingly, a COA is granted on the issue of whether the State's use of peremptory challenges at Woodward's resentencing violated his Fourteenth Amendment right to equal protection under Batson. The court will hear oral arguments concerning the Batson issue and the three issues granted COA by the district court in New Orleans on Wednesday, September 3, 2008. The parties are directed to file supplemental briefs as to the Batson claim and the other

three issues for which COA was previously granted in accordance with a briefing schedule to be issued by the Clerk.

COA GRANTED.