# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01285-COA

**SHERAL LEE SMITH A/K/A SHERAL SMITH**         **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM B. KIRKSEY |
| | NATHAN H. ELMORE |
| | BRUCE L. BARKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/24/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1. In 2010, Sheral Smith pleaded guilty in the Rankin County Circuit Court to four counts of statutory rape. After plea negotiations, the State recommended that Smith be sentenced on each count to twenty years, with thirteen years suspended and seven years to serve, with the sentences to run concurrently, all in the custody of the Mississippi Department of Corrections (MDOC). The circuit court followed the State's recommendation and further mandated that Smith register as a sex offender upon her release and pay a $10,000 fine. The

maximum sentence Smith was facing was 120 years in the custody of the MDOC and a $40,000 fine. Aggrieved, Smith filed a motion for postconviction relief (PCR). Therein, Smith claimed that she had received ineffective assistance of counsel because she was given misinformation regarding the severity of her sentence after negotiations and she was forced into taking the plea bargain by her attorney. Smith also requested an evidentiary hearing regarding the voluntariness of her guilty plea. The request for a hearing was denied, and the circuit court likewise denied the PCR motion. Smith now appeals. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. In 2008, Smith was indicted on four counts of statutory rape after it was discovered that she had sex with her son's fourteen-year-old friend at the boy's home and at her own home between June 2008 and August 2008. After her arrest, the circuit court ordered Smith to submit to a psychological evaluation to determine if she was fit to stand trial. Smith resided at the Mississippi State Hospital at Whitfield (Whitfield) for nine months thereafter.

¶3. While there, Smith was observed by numerous doctors, including Dr. Reb McMichael. Dr. McMichael was the chief of forensic services at Whitfield, and had served in that position for twenty years at the time he evaluated Smith. Dr. McMichael testified at Smith's competency hearing as an expert in forensic psychology. He noted that in his initial report, he advised that Smith was likely not competent to stand trial. However, in that same report, he requested further evaluation based on her "sustained lack of cooperation . . . and her . . . faking symptoms of cognitive impairment, mostly memory impairment." Four months later,

2

Dr. McMichael issued a follow-up report wherein he determined that Smith was competent to stand trial based on his conclusion that she was not suffering from any mental illness but was faking numerous conditions, including memory impairment.

¶4. Dr. McMichael testified that he ultimately determined that Smith was not mentally ill and was faking mental illness based on several factors. One of the key factors related to Smith's absence of memory. Dr. McMichael stated that although Smith appeared to have no recollection of any events after May 2008 – the period of time immediately preceding the illegal acts – she was able to remember time-specific restrictions that affected her during her hospital stay. For instance, Smith knew when she was scheduled to have personal time and the times during which Whitfield staff members could not request that she participate in therapy. Another factor centered on Smith's failure of a memory test. Dr. McMichael explained that for Smith to make such a poor score on one of the memory tests, she had to have known enough of the right answers to purposefully pick the wrong answer. Furthermore, Dr. McMichael refuted another physician's prior diagnosis that Smith had Bipolar I disorder.

¶5. Dr. McMichael was the only expert to testify at the competency hearing. Several opinions from other psychologists were introduced, all of which indicated that Smith was mentally ill and unfit to stand trial. Smith's attorney, John Collette, cross-examined Dr. McMichael using the contrary opinions. Smith's husband, James Steven Smith, also testified that Smith fell prior to her stay in Whitfield and hit her head, causing her to be hospitalized for three weeks. James testified that after Smith's fall and her time in Whitfield, Smith did

3

not understand what was happening around her. Smith also testified, and appeared to have trouble remembering certain events.

¶6. At the close of the competency hearing, the circuit judge determined that Smith appeared to have "selective memory" in that "she remembers what she wants to and doesn't remember anything that she doesn't want to." The circuit judge found that Smith was competent to stand trial, and ordered that the trial begin the following day. Collette stated that he was prepared to begin trial the next day.

¶7. Thereafter, Collette brokered a plea bargain with the State. In exchange for Smith pleading guilty, the State agreed to recommend that Smith be sentenced to twenty years, with thirteen years suspended, seven years to serve, and a $10,000 fine, as opposed to the potential maximum of 120 years to serve and $40,000 in fines. Smith agreed to take the plea bargain. However, James asserts that Smith was advised by Collette that although the State offered her seven years, she should be out of jail in about a year, and that if James ever wanted to have Smith home again, James should convince her to take the plea deal. Smith's sister, Denise Sinclair, also claims that Collette told her that the State was going to recommend a five-year sentence and Smith would be home in three years due to time served. Likewise, Smith's other sister, Sherry Bryan, states that Collette told her he could get Smith a five-year sentence if she would plead guilty. Smith and her family all presented affidavits regarding the differing sentences Collette allegedly conveyed to them. All of the affidavits note that Collette stated that the plea bargain was Smith's best option and, if Smith did not take the plea deal, he was not going to represent her at trial.

¶8.    Smith then signed a plea petition that acknowledged the State was planning to recommend that Smith receive a sentence of twenty years, with thirteen suspended and seven to serve. At the plea hearing, the State made its promised recommendation. The circuit judge stated that he was inclined to follow the State's recommendation, and went over the sentence with Smith again. During this dialogue, the circuit judge emphasized that Smith would have to serve seven years in the custody of the MDOC and that sex offenders were not eligible for early release, nor would Smith be able to receive credit for time served under house arrest.

¶9.    Smith continuously acknowledged that she understood what her sentence specifications would be. She also noted that she did not have any complaints with respect to the services rendered by Collette. Smith stated that her guilty plea was not the result of force, duress, or threats, and that she was fully aware of the decision she was making. As such, the circuit judge accepted Smith's guilty plea and sentenced her to the State's recommendation.

¶10.    Smith filed a PCR motion claiming her guilty plea was not voluntarily and knowingly made due to ineffective assistance of counsel. The circuit judge reviewed the transcripts from Smith's guilty-plea hearing, her sentencing hearing, and her competency hearing, as well as her criminal file, and determined that an evidentiary hearing was not necessary. He ultimately denied her PCR motion. Aggrieved, she appeals.

## DISCUSSION

### I.    Evidentiary Hearing

5

¶11. On appeal, Smith asserts that the trial court erred in failing to grant an evidentiary hearing on her PCR motion before denying the motion. It is well settled that "[a]n evidentiary hearing is not necessary where the allegations in a [PCR motion] are specific and conclusory." *Russell v. State*, 44 So. 3d 431, 434 (¶6) (Miss. Ct. App. 2010) (citing *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)). "The trial court is not required to grant an evidentiary hearing on every [motion] it entertains." *Byrne v. State*, 30 So. 3d 1264, 1266 (¶7) (Miss. Ct. App. 2010) (citation omitted).

¶12. In its order, the circuit court stated that, in addition to the PCR motion – which included numerous affidavits – and the State's response, it had analyzed "the transcript of [the] petitioner's guilty plea and sentencing hearing . . . , the transcript of [the] petitioner's competency hearing . . . , the evidence entered at such hearing[,] and . . . [the] petitioner's criminal file" prior to denying Smith's PCR motion. Smith's argument in her PCR motion centered on an allegation of ineffective assistance of counsel. Given the ample amount of evidence and other documentation before the circuit court, we agree that the court was sufficiently able to determine whether Smith's claim held merit without holding an evidentiary hearing.

¶13. That said, we have held that when a movant purports to have been "given erroneous advice by his attorney as to his eligibility for . . . earned time and that erroneous advice goes uncorrected, and he provides evidence other than his own statement (such as a sworn affidavit from a third party), he is entitled to an evidentiary hearing." *Sylvester v. State*, 113 So. 3d 618, 623 (¶19) (Miss. Ct. App. 2013). Smith's allegations regarding the

6

misinformation she allegedly received from Collette did not go uncorrected. The transcript of the plea hearing shows that the terms of Smith's sentence were listed in her plea petition, which she signed, and the circuit judge reviewed the terms of the sentence with Smith, after which she stated that she understood and accepted them. Specifically, the circuit judge stated on the record to Smith that she would not be eligible for earned time or for early release after she was sentenced. He asked her if she understood these terms, and she stated that she did. As such, an evidentiary hearing was not required, and this issue is meritless.

## II.     Ineffective Assistance of Counsel

¶14.    With regard to Smith's ineffective-assistance-of-counsel claim, it is well-settled law that for her to prevail, she must "show by a preponderance of the evidence (1) that counsel's performance was deficient, and (2) but for the deficiencies, the trial court outcome would have been different." *Jones v. State*, 976 So. 2d 407, 410-11 (¶6) (Miss. Ct. App. 2008) (quotation omitted)). Additionally, under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a movant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial." Finally, "[a] presumption exists that the attorney's conduct was adequate." *Hull v. State*, 983 So. 2d 331, 333-34 (¶11) (Miss. Ct. App. 2007) (citing *Burns v. State*, 813 So. 2d 668, 673 (¶14) (Miss. 2001)).

¶15.    When reviewing the voluntariness of guilty pleas, an appellate court "will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous." *Walton v. State*, 16 So. 3d 66, 70 (¶8) (Miss. Ct. App. 2009) (quoting *House v. State,* 754 So. 2d 1147, 1152 (¶24) (Miss. 1999)). Additionally, "[t]he burden of proving that a guilty plea

7

was involuntary is on the defendant and must be proven by a preponderance of the evidence." *Id.*(citation omitted).

¶16. Here, Smith and her family members have presented affidavits with varying testimonies regarding Collette's alleged faulty advice. The affidavits vary with recollections of Collette purportedly advising Smith that she would be released from jail within one year to three years and would receive between five and seven years of total jail time. Likewise, Smith contends that she was not fully aware of the sentence to which she was pleading. Nonetheless, the transcript of the plea hearing shows that Smith was advised by the trial court of the exact terms of her sentence. The plea petition that Smith signed also outlined the proper terms of her sentence. At no point during the plea hearing or in the plea petition did anyone note that Smith would be eligible for early release or earned time. The circuit judge specifically stated that Smith would not be eligible for time-served credit since the crime for which she was being convicted was a sex crime.

¶17. Smith was also explicitly told the length of her sentence. The circuit judge reviewed the State's recommendation, as it was expressed in Smith's plea petition. The recommendation was twenty years, with thirteen years suspended and seven years to serve, with a $10,000 fine. The plea petition and the circuit judge both reiterated these terms. When asked if she understood the terms, Smith clearly indicated that she understood them and accepted them. She also indicated that she had no complaints or problems with Collette's representation of her and that she was fully satisfied with his services.

¶18. Nonetheless, Smith now contends that she lied to the circuit court, and that she was

coerced into taking a plea deal that was not properly explained to her by Collette. Specifically, Smith alleges the following:

> While it is true that . . . Smith took part in the colloquy with [the circuit judge], and recited that she was making the plea voluntarily, and understood that the crimes carried a day-for-day penalty, she did so at the instruction and under threats from her attorney that if answered in a way that differed from what he instructed her, the plea process would be upset, and she would go to prison for thirty years or more.

¶19. First, we have previously addressed the conundrum of an appellant claiming that a prior version of his testimony under oath was untrue but that the version on appeal is true. *See Boyd v. Smith*, 797 So. 2d 356, 363 (¶17) (Miss. Ct. App. 2001) (citation omitted). We have held that a movant who employs this reasoning has "been glaringly untruthful to at least one court of law[, thereby rendering him] completely without credibility." *Id*. at (¶16). More specifically, we stated:

> If a movant could, at a later date, successfully contradict his own assertions made under oath at his plea[-]acceptance hearing, then there would be no purpose in conducting the hearing at all. "Truth" would become an illusory concept meaning nothing more than what the declarant asserted it to be at any particular point in time.

*Id.* (citation omitted).

¶20. Such is the case at hand. Smith stated on the record that she understood the terms to which she was pleading and that she was pleased with Collette's assistance. The sentence itself was written verbatim in the plea petition and reiterated numerous times during the plea hearing. While Smith and her family take particular issue with Collette's alleged threat that she may never see her home again if she did not take the plea deal, such a statement does not constitute ineffective assistance of counsel if it is true. We note that Smith was facing up to

9

120 years in prison since each of the four counts carried a maximum of thirty years. With sex crimes being served day-for-day, Smith would not have seen her home for at least thirty years had she received a maximum punishment on any of the four counts.

¶21. We have held that "counsel has a duty to fairly, even if that means pessimistically, inform the client of the likely outcome of a trial based upon the facts of the case." *Middlebrook v. State*, 964 So. 2d 638, 640 (¶9) (Miss. Ct. App. 2007) (citation omitted). Hence, Collette's recommendation for Smith to accept a sentence wherein she would only serve seven years, as opposed to 120 years, was not improper. His assertion regarding the possibility that she would never see her home again was also not improper since it was true. Smith's claims of ineffective assistance of counsel and an involuntary guilty plea are without merit. As such, we affirm the judgment of the circuit court.

¶22. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**